# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CHRISTIANA BUSH,<br><br>Plaintiff,<br><br>v.<br><br>VACO TECHNOLOGY SERVICES, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-05605-BLF<br><br>**ORDER GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART VACO'S MOTION TO DISMISS OR STRIKE; GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART GOOGLE'S MOTION TO DISMISS OR STRIKE**<br><br>[Re: ECF 70, 71] |

This is the third round of motions to dismiss/strike class allegations in this labor law class action. In the previous two rounds, the Court strongly warned Plaintiff Christiana Bush that her class allegations and definitions were so broad as to be wholly implausible. Though Plaintiff's Third Amended Complaint substantially narrows her class definitions, the Court finds that they are still implausibly broad and requires Plaintiff to narrow them for a final time accordingly. The Court also finds that equitable tolling is not appropriate for Plaintiff's individual claims or the class claims.

Given these conclusions, Defendant Vaco Technology Services, LLC's ("VTS") motion to dismiss or strike (Vaco Mot., ECF 71) is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, and Defendant Google, LLC's ("Google") motion to dismiss or strike (Google Mot., ECF 70) is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART. Plaintiff's amended complaint is due **21 days from the date of this Order**.

## I. BACKGROUND

The Court has had the opportunity to summarize the facts of this case on multiple occasions and will refrain from doing so again here. *See* ECF 60 ("SAC Order"); ECF 44 ("FAC Order"). Most importantly, in her Second Amended Complaint ("SAC"), Plaintiff alleged that VTS staffed her at Google in Google's Expedition Team as an Expedition Team Lead and that she was the victim of several wage and hour violations by both Defendants while in that position. Second Amended Complaint ("SAC") ¶¶ 26–29, ECF 47. She brought labor law claims on behalf of herself and several putative classes against VTS, Google, and several other Vaco entities.

In its order dismissing Plaintiff's First Amended Complaint ("FAC"), the Court warned Plaintiff that her class allegations were entirely too broad, given that her factual allegations pertained only to her job on Google's Expedition Team. *See generally* FAC Order. In her SAC, Plaintiff included four defined classes, each of which had numerous claim-specific sub-classes or location-based sub-classes. Those classes were as follows: (1) "Google Staffing Class: All persons employed by Google through any staffing agencies who worked in hourly or non-exempt positions in California during the Relevant Time Period"; (2) "Google Expedition Class: All persons employed directly by Google and/or through any staffing agencies who worked in Google Expedition Team positions in the United States during the Relevant Time Period"; (3) "Vaco Class: All persons directly employed by Vaco Entities who worked in hourly or non-exempt positions in California during the Relevant Time Period"; and (4) "UCL Class: All Google Staffing Class, Google Expedition Class and Vaco Class members employed by Defendants in California during the Relevant Time Period." SAC ¶ 17.

On December 3, 2018, the Court dismissed Plaintiff's SAC because her class allegations remained too broad. *See generally* SAC Order. The Court first summarized Bush's allegations as follows:

> Bush alleges she was staffed by a specific staffing agency (VTS) for a specific company (Google) in a specific job (Expedition Team Leader) that required specific job duties. And these job duties were not run-of-the-mill: Bush was required to travel to various locations, transport phones, train on and demonstrate the functionalities of the phones, and ensure the phones were ready for the next set of demonstrations (including charging the phones at home). *See* SAC ¶¶ 30–35.

SAC Order at 4. The Court held that Plaintiff's allegations were "overbroad at each and every step in this narrowing chain." *Id.*

First, the Court held that Plaintiff's allegations could not support claims against any Vaco-entity Defendant except VTS, who staffed Plaintiff at Google. *Id.* Second, the Court held that "[t]he Vaco Class is overbroad because it covers employees of Vaco Defendants staffed at *any* company," but Plaintiff's allegations were "tailored to her job duties" at Google. *Id.* at 5. Likewise, Plaintiff had alleged that Google and VTS were Plaintiff's joint employers, indicating that there might be something unique about employees staffed at Google. *Id.* at 5. Third, the Court found that Plaintiff's Google staffing class was too broad because it "encompasse[d] all persons employed by Google in *any* hourly or non-exempt positions," as opposed to just in Plaintiff's specific job as Expedition Team Lead, which required her to "perform discrete, unique job duties" that she had "not allege[d] that other employees at Google or who were staffed by Vaco Defendants experienced." *Id.* at 5–6. And the Court noted that the only allegations connecting such a broad swath of people all spoke to "alleged policies that 'Defendants' followed with respect to their employees." *Id.* at 6. Without more, these allegations could not hold together the classes. *Id.*

After detailing these deficiencies, the Court took stock of what remained: "At most, on these allegations, Bush might be able to proceed with a putative class of Expedition Team Leads, either staffed by VTS or perhaps staffed directly by Google, though even the latter would be a close call, given that VTS and Google are alleged to have acted in tandem as to Plaintiff." *Id.* at 7. The Court concluded with another strong admonition to Plaintiff: "The Court means what it says this time: Failure to cure these deficiencies will lead the Court to strike permanently Bush's class allegations from her pleading." *Id.* at 7.

On January 23, 2019, Plaintiff filed her Third Amended Complaint ("TAC"). Third Am. Compl. ("TAC"), ECF 65. In her TAC, Plaintiff brings claims against Google and VTS only; she drops the other Vaco-entity Defendants. And she alleges the following three classes, each of which has sub-classes: (1) "Google Expedition Class: All persons employed directly by Google and/or through any staffing agencies, including but not limited to Vaco, who worked in schools to

3

promote Google Expeditions in the United States during the Relevant Time Period"; (2) "Vaco Class: All persons directly employed by Vaco who worked in hourly or non-exempt positions in California during the Relevant Time Period"; and (3) "UCL Class: All Google Expedition Class and Vaco Class members employed by Defendants in California during the Relevant Time Period." TAC ¶ 13. The Google Expedition Class has a California sub-class. The Vaco Class has several sub-classes: (1) the Vaco Google Class, defined as "All persons employed by Vaco who worked in hourly or non-exempt positions in California during the Relevant Time Period at Google"; and (2) claim-specific subclasses based on the broader Vaco Class (which are not limited to individuals staffed at Google). *Id.*

In addition to narrowing her class allegations, Plaintiff also added factual allegations related to two jobs she held at Google through VTS prior to working as an Expedition Team Lead. Specifically, Plaintiff was hired by VTS and worked at Google as an Order Audit Operation Specialist, a non-exempt hourly position that mainly required data entry, and as a Content Bug Technician, a non-exempt hourly position that involved software quality assurance. *Id.* ¶¶ 22, 28, 35. While Plaintiff was in these two previous roles, she alleges that both VTS and Google severely understaffed the positions, pressured employees to remain at their desks, did not have meal or rest break policies, and failed to schedule meal or rest breaks. *Id.* ¶¶ 26–31. As a result of these actions by Defendants, Plaintiff and the putative class could not take uninterrupted meal or rest breaks, but they were not paid for these missed breaks. *Id.* ¶¶ 32–33, 36–37, 50–51, 61, 67. She also alleges that while she worked in each of her positions, Defendants rounded meal periods to the nearest quarter hour. *Id.* ¶ 62.

In her TAC, Plaintiff brings the following eight causes of action, on behalf of herself and various combinations of the classes and sub-classes: (1) Failure to Provide Meal Periods (Lab. Code[1] §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198); (4) Failure to Indemnify (Lab. Code § 2802); (5) Failure to Provide

---

[1] All state statutes cited herein are California statutes.

4

Accurate Written Wage Statements (Lab. Code § 226(a)); (6) Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203); (7) Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.); and (8) Failure to Pay Employees for All Hours Worked (Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.).

Google and Vaco filed the instant motions to dismiss/strike on February 19, 2019, and the Court held a hearing on the motions on June 20, 2019.

**II. LEGAL STANDARD**

**A. Motion to Dismiss**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese,* 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district

court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). If a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

### III. DISCUSSION

Google moves to dismiss or strike Plaintiff's Vaco Class and sub-classes, as well as all references in the TAC to equitable tolling. *See generally* Google Mot. VTS moves to dismiss or strike Plaintiff's Vaco Class and sub-classes. Neither Defendant challenges Plaintiff's Google Expedition Class.

The Court first discusses the class allegations and then the references to tolling in the TAC.

### A. Class Allegations

Defendants make similar arguments in their motions.[2] Defendants argue that the Vaco Class and its subclasses are supported only by "threadbare, conclusory allegations" that "do not satisfy basic pleading standards and instead invite only discovery abuse," Google Mot. at 2. *See also* Vaco Mot. 1–2. Specifically, they argue that "Bush still alleges no credible facts pertaining to Vaco employees beyond, at most, those staffed at Google as an Expedition Team Lead." Google Mot. at 3–4; *see also* Vaco Mot. at 7–8. As to Plaintiff's allegations concerning her previous work at Google, Defendants argue that "the added paragraphs are merely conclusory assertions of law and fact," each of which contains "boilerplate language," such as Defendants not providing written policies and understaffing the positions. Google Mot. at 3–4, 6; *see also* Vaco Mot. at 8–9, 11. These allegations also still pertain only to Plaintiff's own assignments at Google, not to any other assignments at Google, much less other companies that are not Google. *See* Google Mot. at 4; Vaco Mot. at 8–9, 12–13. And they note that Plaintiff still fails to differentiate between Defendants in several places throughout the TAC. *See* Google Mot. at 5 (citing TAC ¶¶ 87, 102); Vaco Mot. at 13. Finally, Google makes specific arguments as to the deficiencies of the class allegations with respect to each claim. *Id.* at 5–10.

Plaintiff opposes both motions in substantially similar oppositions; the Court cites only her opposition to Google's motion for ease. Plaintiff first argues that it would be premature to dismiss class allegations. Google Opp. at 6–7, ECF 75. Next, Plaintiff notes that she has alleged that Google and VTS are joint employers. *See id.* at 8. She then notes that other courts have permitted classes of staffing company employees to proceed past the pleading stage. *Id.* at 8–9 (citing cases). She then goes on to document the allegations in the TAC that support each of her claims, apparently focusing primarily on how her allegations support her individual claims, though referencing allegations regarding practices and policies (or lack thereof) that allegedly applied class-wide. *Id.* at 10–14.

As stated at the hearing on the motion, Google's and VTS's motions are GRANTED

---

[2] The Court notes at the outset that neither Defendant moves to dismiss Plaintiff's individual claims.

7

WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART on this issue as specified below.

As to the broad Vaco Class, Plaintiff did not cure the problems identified in this Court's previous orders. Plaintiff has not pled any factual allegations concerning employees staffed by VTS at locations other than Google. Without a single non-conclusory, factual allegation about these potential class members, Plaintiff has not plausibly alleged that any of these employees experienced the same alleged violations as Plaintiff. Conclusory allegations that Defendants had or did not have certain policies is insufficient. Several other facts confirm this conclusion. First, Plaintiff's TAC is premised on a theory that Google and VTS joint employed Plaintiff and the class members. *See, e.g.*, TAC ¶ 9, 21, 24–25. It is implausible (if not unbelievable) that Google jointly employed members of the Vaco Class who did not work at Google. Because the allegations are tailored at least specifically to employees who were jointly employed by Google, it is implausible that these same alleged actions impacted non-Google employees. Second, and relatedly, the TAC often refers to actions taken by or the policies of "Defendants." *See, e.g.*, TAC ¶¶ 87, 102. This non-specificity as to the role of each Defendant further indicates that the Plaintiff's inclusion of employees other than those employed at Google is implausible. Thus, Plaintiff has not plausibly alleged that the broad Vaco Class is a proper putative class in this lawsuit. Because the Court has provided Plaintiff numerous opportunities to sufficiently allege that plausibility of this class, the Court concludes that further leave to amend would be futile.

As to the narrower Vaco Google Class, the Court finds that Plaintiff has not plausibly alleged claims on behalf of such a broad class, but that she might be able to allege claims on behalf of a much narrower class—namely those individuals employed at Google in the same jobs that Plaintiff held.

Though Plaintiff has added additional allegations regarding her previous jobs at Google, as the Court directed her to do in its previous orders, her allegations fall short of encapsulating other employees who worked in different jobs. First, many of her allegations lack factual support from which the Court could infer their applicability to a broader class. For example, Plaintiff alleges that VTS and Google severely understaffed the class members' positions, pressured employees to

8

remain at their desks and work through breaks, did not have meal or rest break policies, and failed to schedule meal or rest breaks. TAC ¶¶ 26–31. But Plaintiff does not provide facts about any of the positions (including her own) from which the Court could conclude that these allegations are plausible. There is not information about how Defendants pressured her or the putative class, how the understaffing of the positions manifested, or how the lack of policies or scheduled breaks led Plaintiff or the class to experience the alleged violations. Without more, the Court cannot infer that others who held different positions experienced these same constraints and circumstances.

Second, where Plaintiff does allege a bit more specific information, such information confirms that the allegations should be limited to the jobs Plaintiff held. For instance, as Defendants note, Plaintiff premises many of her allegations on things she experienced when she worked in those positions. *See, e.g.*, TAC ¶¶ 32 ("While working as an hourly, non-exempt Order Audit Operation Specialist on Google's main campus Plaintiff and putative class members were often unable to take 30 minute uninterrupted meal breaks. . ."); *see also* TAC ¶¶ 33, 36–37, 50–51, 61, 67. Likewise, Plaintiff alleges that Defendants pressured Plaintiff and class members to remain at their desk, and that they were required to attend meetings throughout the day that kept them from taking breaks. *See, e.g.*, TAC ¶¶ 32–33, 50. These allegations require the class to work at desks and/or to attend meetings. But the Vaco Google Class would encapsulate employees who do neither, or certainly who do not do these tasks in the same way, including, for instance, janitors. At bottom, then, Plaintiff's TAC is devoid of factual information pertaining to how the Defendants' alleged actions impacted putative class members beyond those who held Plaintiff's same roles. Again, the Court has given Plaintiff numerous opportunities to amend to plausibly allege that these putative class members belong in this action. She has repeatedly failed to comply. The Court thus concludes that further leave to amend would be futile.

That said, given that Defendants do not challenge Plaintiff's individual claims, and that Plaintiff includes some allegations pertaining to all three of the jobs she held at Google, Plaintiff has sufficiently alleged a putative class (or three distinct classes) of individuals who were employed at Google in each of Plaintiff's three prior roles: Expedition Team Leader, Order Audit Operation Specialist, and Content Bug Technician. As such, Defendants' motions are GRANTED

9

WITH LEAVE TO AMEND for Plaintiff to narrow her class allegations to those encompassing only employees staffed in these three positions. Apart from the Google Expedition Class and California Sub-Class and the related portion of the UCL class, Plaintiff's remaining class definitions are dismissed. If Plaintiff chooses to narrow her definitions to the constraints above, the Court finds her allegations as to those classes sufficient to continue to the class certification stage. To the extent Google and VTS raise claim-specific arguments as to each class, such arguments are more appropriately raised at class certification.

Again, the Court recognizes that dismissing class allegations is rare, but in light of the pleading requirements of *Twombly*/*Iqbal* and the Court's role as a gatekeeper against discovery fishing expeditions, the Court concludes that this is the rare case where dismissing class allegations is appropriate, especially in light of the numerous opportunities to amend the Court has provided before today.

### B. Tolling

Google also argues in its motion that the Court should strike references in the TAC to tolling of Plaintiff's and the classes' claims, which are based on the state court action in *Daniel Trujillo v. Vaco Technology Services, LLC*, Santa Clara County Superior Court Case No. 1-15-CV-280846. Google has moved before to strike from Plaintiff's complaint the references to tolling and the *Trujillo* action, but the Court has not yet needed to reach the issue. *See* ECF 50 at 16–17. The Court first discusses the relevant facts and then analyzes the arguments here.

#### 1. Additional Facts

In her class allegations, Plaintiff defines the relevant time period for the classes as beginning four years prior to the filing of "this Action." TAC ¶ 12. "This Action" is not the present *Bush* action but rather "the suit filed on May 19, 2015 with the Santa Clara County Superior Court, Case No. 2015-1-CV-280846, on behalf of Plaintiff Daniel Trujillo, all others similarly situated against Defendants." *Id.* ¶ 11. Also, Plaintiff's FLSA claim alleges that the damages period is "three (3) years preceding the filing of this Complaint, plus periods of equitable tolling." *Id.* ¶ 184. She does not allege tolling with respect to any of her other individual claims.

The *Trujillo* action was filed on May 19, 2015. TAC ¶ 11. On November 7, 2016,

plaintiffs in that case filed a fourth amended complaint. Chammas Decl., Ex. A ("*Trujillo* 4AC"), ECF 23-1.[3] The Fourth Amended Complaint asserted the following seven claims against Google and VTS: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Weekly (Lab. Code § 201.3); (4) Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a)); (5) Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203); (6) Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*); and (7) Civil Penalties (Lab. Code §§ 2698, *et seq.*). *See generally Trujillo* 4AC. Claims 1, 2, 4, 5, and 6 were also asserted in the *Bush* action, but claims 3 and 7 were not asserted here. Moreover, the *Bush* action includes additional claims for Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198); Failure to Indemnify (Lab. Code § 2802); and Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201, *et seq.* (FLSA).

The class allegations in the *Trujillo* action included numerous class definitions. The primary classes were as follows: (1) "VACO Hourly Employee Class: All persons employed by VACO in hourly or non-exempt positions in California, including individuals who were misclassified as exempt, during the Relevant Time Period"; (2) "VACO Exempt Employee Sub-Class: All persons employed by VACO in exempt positions in California who were misclassified as exempt because they were primarily engaged in and spent more than one half of their work time performing non-exempt work, during the Relevant Time Period." *Id.* ¶ 26. Each of these classes also included sub-classes for those employees "employed by Google, by and through Vaco." *Id.* And there were numerous claim-specific Vaco classes, each of which also included an "employed at Google" sub-class. *Id.* These classes can fairly be said to overlap with certain *Bush* classes in the TAC, namely the Vaco Class, the Vaco Google Class, and the claim-specific Vaco classes (at least insofar as the claims in the two actions overlap). *See* TAC ¶ 13. However, the Google Expedition Class was not included in the *Trujillo* action.

---

[3] The Court takes judicial notice of the facts of the *Trujillo* action, including the fourth amended complaint, because courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *see* Fed. R. Evid. 201(b).

11

The *Bush* action was filed on August 24, 2017. ECF 1 ¶ 1. The *Trujillo* complaint was dismissed on March 20, 2018 because the remaining lead plaintiff no longer wished to serve as class representative. Chammas Decl. ¶ 8. Plaintiff's counsel, who represented the plaintiff in *Trujillo*, requested a dismissal without prejudice that contemplated amending the *Bush* complaint to add the class claims for all employees currently or previously employed by Vaco in California, which Plaintiff added to her FAC. *See* ECF 74-3; ECF 47.

### 2. Analysis

In its motion, Google argues that Plaintiff fails to allege that the *Trujillo* action tolls her or the classes' claims in this case. First, Google notes that Plaintiff does not allege any facts to establish that tolling is warranted. Google Mot. at 11–12. Second, even if Plaintiff had alleged facts supporting tolling of her FLSA claim, the class claims cannot be tolled under either the FLSA or California law because of the Supreme Court's decisions in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018). Google contends that California law follows federal law on these issues. Google Mot. at 12–13. Third, Google argues that even if *American Pipe* tolling were available, Plaintiff's putative classes are not co-extensive with *Trujillo*'s putative classes, such that at least her broader classes do not get tolling. Finally, anticipating Plaintiff's argument in opposition, Google argues that the Ninth Circuit's decision in *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) does not provide a basis on which to toll Plaintiff's state-law claims.

In her opposition, Plaintiff makes no argument as to tolling of her FLSA claim but argues that California's equitable tolling doctrine, as described in *Hatfield*, allows her to bring her state law claims here. She argues that she satisfies the requirements for equitable tolling because (1) she gave timely notice to Defendants of the filing of the first claim because Defendants were named in *Trujillo*; (2) Defendants are not prejudiced because they were on notice of their violations of the wage-and-hour laws; (3) Plaintiff acted in good faith by adding the Vaco claims when the *Trujillo* action ended; and (4) Google's arguments should be made at class certification.

The Court first describes the tolling law and then applies the law to the allegations here.

*a. Tolling Law*

In 1974, the Supreme Court in *American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. In that case, a class action was filed just before the statute of limitations expired, and then the trial court declined to certify the class. Eight days after the denial of certification, class members sought to intervene in the action to assert the same claims as the class would have asserted. *Id.* at 543–44. The Supreme Court tolled the statute of limitations for those class members, holding that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. In so holding, the Supreme Court noted that the purpose of statutory limitation periods is to "ensur[e] essential fairness to defendants" by "barring a plaintiff who has slept on his rights" by not putting the defendants on notice of the claims against them early enough for the defendants to marshal fresh evidence and witnesses. *See id.* at 554–55. This purpose is satisfied, the Supreme Court held, when "a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.*

Subsequently in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court held that *American Pipe*'s rule "is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, 'prefer to bring an individual suit rather than intervene . . . once the economies of a class action [are] no longer available.'" *China Agritech*, 138 S. Ct. at 1804 (quoting *Crown, Cork*, 462 U.S. at 353–54) (alteration and omission in original).

In 2009, the Ninth Circuit in *Hatfield* described the relationship between *American Pipe* tolling, which both parties agree applies only to federal claims, and California's equitable tolling law. In *Hatfield*, the Ninth Circuit explained that the purpose of equitable tolling in California "is to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action." 564 F.3d at 1188. In finding that

13

plaintiff Hatfield's individual claims were tolled, the Ninth Circuit set forth the three factors courts consider when deciding whether to apply equitable tolling: "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Id.* at 1185. The Ninth Circuit held that Hatfield satisfied each of these factors because she timely filed her first-suit claims; her subsequent action was substantially similar to her first suit; and she brought the subsequent action on the same day her first action was dismissed for jurisdictional defects. *Id.*; *see also id.* at 1185 n.2 (describing another Ninth Circuit case in which tolling applied because the plaintiff's original suit was timely, she filed a "nearly identical" complaint, and she filed her second claim shortly after the first).

The Ninth Circuit then went on to determine whether Hatfield's class claims were similarly tolled. In so holding, the Ninth Circuit recognized that equitable tolling and *American Pipe* tolling are distinct because California's equitable tolling doctrine "covers situations beyond those covered by *American Pipe*." *Id.* at 1188. Specifically, "California's equitable tolling doctrine is a policy adopted and approved specifically by the California courts. Its purpose is to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action." *Id.* That said, the Ninth Circuit noted that the California Supreme Court had cited *American Pipe* with approval. Indeed, the California Supreme Court has recognized that "in the absence of controlling state authority, California courts should utilize the procedures of rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) to ensure fairness in the resolution of class action suits." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1118 (1988). In *Hatfield*, the Ninth Circuit concluded by stating that given this adoption by the California courts, "we see no reason why, in an equitable tolling situation, California would require each individual California resident who is a member of the Hatfield class to file individually and burden the courts with numerous suits." 564 F.3d at 1189.

In June 2018, the Supreme Court in *China Agritech* further clarified the scope of *American Pipe* tolling, holding that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.* That is, "[u]pon denial of class

14

certification . . . a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, [may not] commence a class action anew beyond the time allowed by the applicable statute of limitations." *Id.* The Supreme Court stated that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* at 1806.

Since the decision in *China Agritech*, the California Court of Appeal, at the direction of the California Supreme Court, has applied *China Agritech* to California's equitable tolling doctrine, implicitly calling into question the continued correctness of *Hatfield*'s distinction between *American Pipe* tolling and California's equitable tolling doctrine with respect to successive class claims. In April 2018, before the decision in *China Agritech*, the California Court of Appeal in *Fierro v. Landry's Restaurant, Inc.* held that *American Pipe* tolling applied to the successively filed class claims in the case. 23 Cal. App. 5th 325, 340–41 (2018). In August 2018, the California Supreme Court vacated the Court of Appeal's decision and directed the Court of Appeal to "reconsider the cause in light of *China Agritech*." *Fierro v. Landry's Restaurant*, 425 P.3d 585 (Aug. 29, 2018). Upon reconsideration, the Court of Appeal reversed course, holding that "*American Pipe* tolling does not apply to Fierro's class claims." 32 Cal. App. 5th 276, 298 (2019).

In its second decision, the Court of Appeal equated *American Pipe* tolling with California's equitable tolling doctrine, *see id.* at 285, 295, and held that "the efficiency favoring early assertion of competing class representative claims in the federal system [citing *China Agritech*] is equally applicable to class claims being litigated in California state courts," *id.* at 293. Mincing no words, the Court of Appeal held that "there is no basis under California law for potentially unlimited tolling of statutes of limitations applicable to class claims," such that "[e]quitable tolling of class claims under *American Pipe* . . . does not serve California's stated purposes of legislating limitation periods. To the contrary, application of *American Pipe* tolling to class claims would be inconsistent with the [California] policies associated with the application of statutes of limitations." *Id.* at 295.

15

One important fact to note, however, is that *Fierro* is premised, like *American Pipe* and *China Agritech*, on the event that "a plaintiff class is not certified," whereas the *Hatfield* decision, and other equitable tolling decisions on which it relies, allow for tolling where the class claims fail for procedural reasons, such as jurisdictional defects. The Court does not find that this distinction is material.

### b. Application

Under this law, the Court finds that equitable tolling is not appropriate in this case. As a reminder, Plaintiff only references equitable tolling in two places in the TAC: (1) explicitly in her individual FLSA claim; and (2) implicitly in her class allegations, and thus in each of her class claims, by defining the class period in terms of the *Trujillo* action. She does not expressly allege tolling as to her state law individual claims.

As to the FLSA claim, Plaintiff concedes (by not arguing otherwise) that *American Pipe* and *China Agritech* bar her class claim. The Court agrees; the express holding in *China Agritech* bars equitable tolling of this claim for the class. But what about Plaintiff's individual FLSA claim? *American Pipe* expressly tolls individuals' successive claims asserted previously in a putative class action. The problem for Plaintiff here is Mr. Trujillo did not bring an FLSA claim. *See Trujillo* 4AC. Thus there is no previous FLSA claim to toll. As such, the reference to equitable tolling in TAC ¶ 184 is stricken.

As to the state law claims, Plaintiff does not plead equitable tolling for her individual state law claims. She pleads it only in the definition of the classes. If she had pled tolling for her individual claims, *American Pipe* tolling would apply. However, *China Agritech* as applied by *Fierro* makes clear that *American Pipe* tolling does not apply to the class claims. Nor does California's equitable tolling doctrine seemingly apply, even in light of *Hatfield*. *Fierro*, at the direction of the California Supreme Court, calls into question *Hatfield*'s distinction between the application of *American Pipe* tolling and California equitable tolling. Under *Fierro*, *China Agritech* applies in full force to California state law claims, making tolling inappropriate for Plaintiff's successive class claims here.

The Ninth Circuit in *Hatfield* considered California's equitable tolling doctrine without the

benefit of the California Supreme Court and Court of Appeal's application of *China Agritech*. It is this Court's respectful view that *Hatfield* is no longer applicable precedent because subsequent state court decisions have altered the primary basis of the *Hatfield* ruling. That being said, the Court recognizes that *Fierro* and the *American Pipe* line of cases apply specifically to class claims that have "failed" in the courts (*e.g.*, through denial of certification). The class claims in *Trujillo* did not fail, but rather were dismissed without prejudice because of the representative plaintiff's unwillingness to continue litigating the case. Although this Court does not find that the outcome would differ, to the extent that this factual distinction may be found to meaningfully distinguish this case from the *American Pipe* line of cases, the Court will alternatively apply California's equitable tolling doctrine to the facts of this case. Even under this doctrine, the Court finds that equitable tolling is not appropriate in this case under the three-factor test set forth in *Hatfield*.

Several facts weigh against allowing equitable tolling here, each of which indicates that it would prejudice Defendants to allow equitable tolling. First, the class definitions in the cases do not overlap. Trujillo brought claims on behalf of a Vaco Class that are no longer in this case because the Court has substantially narrowed them. Though Google may have been on notice that Vaco employees working at Google were the focus of the *Trujillo* action, the number of claimants in that case and the range of jobs at issue were drastically more numerous than remain in this case. Likewise, this case has (and had in previous iterations of the complaint) *broader* class allegations, in that it involves a Google Expedition Class that the Trujillo Action did not include. At the very least then, the Google Expedition Class could not be tolled.

Second, the claims brought in each action are not the same. Though some claims overlap, and they are all wage and hour violations, several claims do not overlap. The substantial identity of successive claims was a key motivating factor in *Hatfield* and the cases on which it relies. Denying equitable tolling when neither the parties nor the claims overlaps comports with *Hatfield*'s guidance to look to *American Pipe*, even if the types of tolling are not identical. *American Pipe* emphasized that the defendant was on notice of "the substantive claims being brought against them, [and] also of the number and generic identities of the potential plaintiffs who may participate in the judgment." 414 U.S. at 554–55.

Third, and finally, Plaintiff filed her claims in this case *before* the *Trujillo* Action ended. Not only does this reinforce that the claims and parties at stake differ, but also it is an anomaly in the tolling jurisprudence. How Plaintiff's state-law claims here can be tolled by an action that was still ongoing at the time she filed those claims here is a mystery. But more importantly, it shows that Defendants could not have been on notice that Plaintiff's claims would be tolled based on *Trujillo*, and thus Defendants would be prejudiced to allow such tolling. It also indicates that Plaintiff is not acting reasonably in seeking to toll her claims. Given that she cannot toll her claims, it is likewise inequitable to allow tolling of even the narrow overlap between *Trujillo* and this case: the narrowed three-job Vaco Class for the handful of claims asserted both here and in *Trujillo*.

At bottom, this is a separate lawsuit than *Trujillo*, brought on behalf of a unique set of claimants, based on a meaningfully different set of claims. Plaintiff and the classes do not deserve equitable tolling here. *See Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 1064991, at *7–*8 (N.D. Cal. Mar. 21, 2017) ("A proposed class period dating back to August 15, 2010 for a cause of action with a one-year limitations period is facially invalid, absent any allegations which would extend the one-year period by discovery, equitable tolling or otherwise.").

Google's motion is GRANTED WITHOUT LEAVE TO AMEND with respect to tolling. The "Relevant Action" (and thus the relevant time period) in this case for the purpose of Plaintiff's class allegations is the present action. Likewise, Plaintiff's state-law and FLSA claims cannot be tolled.

## IV. ORDER

Based on the foregoing, VTS' motion to dismiss or strike is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, and Google's motion to dismiss or strike is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART. Plaintiff may only amend her complaint as set forth above, namely, to narrow her class allegations from a Vaco Class to a class(es) based on her previous jobs at Google, to narrow her class allegations to the appropriate relevant time period, and to strike

references to equitable tolling. Plaintiff may not add new claims or parties absent express leave of Court. Plaintiff's amended complaint is due **21 days from the date of this order**.

**IT IS SO ORDERED.**

Dated: July 22, 2019

_____
BETH LABSON FREEMAN
United States District Judge