1 Shaun Setareh (Cal. State Bar No. 204514)
   shaun@setarehlaw.com
2 Thomas Segal (Cal. State Bar No. 222791)
   thomas@setarehlaw.com
3 Farrah Grant (Cal. State Bar No. 293898)
   farrah@setarehlaw.com
4 SETAREH LAW GROUP
   9665 Wilshire Boulevard, Suite 430
5 Beverly Hills, California 90212
   Telephone (310) 888-7771
6 Facsimile (310) 888-0109

7 Attorneys for Plaintiff
   CHRISTIANA BUSH

8
   [*Additional counsel listed on next page*]
9

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13

14 CHRISTIANA BUSH, on behalf of herself, all       Case No. 5:17-cv-05605-BLF
   others similarly situated, and the general public,
15                                                    Assigned For All Purposes to the Honorable
                      *Plaintiff*,                    Beth Labson Freeman, Courtroom 3
16
                                                      **NOTICE OF JOINT MOTION AND JOINT**
17        vs.                                         **MOTION FOR PRELIMINARY**
                                                      **APPROVAL OF CLASS ACTION**
18 VACO TECHNOLOGY SERVICES, LLC, a                   **SETTLEMENT AND CERTIFICATION OF**
   Tennessee limited liability company; VACO          **SETTLEMENT CLASSES;**
19 SAN FRANCISCO, LLC, a Tennessee limited            **MEMORANDUM OF POINTS AND**
   liability company; VACO LAJOLLA, LLC, a            **AUTHORITIES IN SUPPORT THEREOF**
20 Tennessee limited liability company; VACO
   ORANGE COUNTY, LLC, a California                   [Filed Concurrently with the Declaration of
21 limited liability company; VACO LOS                Shaun Setareh and [Proposed] Order]
   ANGELES, LLC, a Tennessee limited liability
22 company; GOOGLE, INC., a Delaware                  Date:   July 15, 2021
   corporation; and DOES 1 to 50, inclusive,          Time:   9:00 a.m.
23                                                    Place:  Courtroom 3
24                    *Defendants*.
                                                      Action Filed:        August 24, 2017
25                                                    Date of Removal:     September 27, 2017
                                                      4th Am. Complaint:   August 12, 2019
26

27

28

Daniel B. Chammas (SBN 204825)
FORD & HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401
dchammas@fordharrison.com

Attorneys for Defendants
VACO TECHNOLOGY SERVICES, LLC


Zachary P. Hutton (SBN 234737)
Paul A. Holton (SBN 313047)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
zachhutton@paulhastings.com
paulholton@paulhastings.com

Attorneys for Defendant
GOOGLE LLC

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 15, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Plaintiff CHRISTIANA BUSH ("Plaintiff") and Defendants VACO TECHNOLOGY SERVICES, LLC ("VTS") and GOOGLE LLC ("Google") will and do hereby move this Court to: (1) conditionally certify two settlement classes; (2) preliminarily approve the parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiff as the Class Representative, her counsel as the Class Counsel, and Phoenix Settlement Administrators., as the Settlement Administrator; (4) approve the forms of Class Notice and proposed timeline for administration; and (5) schedule a hearing on the final approval of the Settlement for December 16, 2021, or as soon thereafter as the Court is available.

This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within the range of possible final approval.

This motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes, the accompanying Declaration of Shaun Setareh, all accompanying exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and arguments as may be presented at the hearing.

DATED:  February 19, 2021          SETAREH LAW GROUP


                                   /s/ Shaun Setareh
                                   SHAUN SETAREH
                                   Attorneys for Plaintiff
                                   CHRISTIANA BUSH

DATED:  February 19, 2021          FORD & HARRISON LLP


                                   /s/ Daniel B. Chammas
                                   DANIEL B. CHAMMAS
                                   Attorneys for Defendants VACO TECHNOLOGY
                                   SERVICES, LLC; VACO SAN FRANCISCO, LLC;,
                                   VACO LA JOLLA, LLC;  VACO ORANGE COUNTY,
                                   LLC; and VACO LOS ANGELES, LLC

1  DATED:  February 19, 2021          PAUL HASTINGS LLP

2

3                                     _/s/ Zachary P. Hutton_____
                                      ZACHARY P. HUTTON
4                                     Attorneys for Defendant
                                      GOOGLE LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion seeks preliminary approval of the class action settlement of this wage-and-hour action between Plaintiff CHRISTIANA BUSH ("Plaintiff"), on behalf of herself and the Class Members described below, and Defendants VACO TECHNOLOGY SERVICES LLC ("VTS") and GOOGLE LLC[1] ("Google") (VTS and Google, collectively, are the "Defendants") (all parties, collectively, are the "Parties").[2]

As the result of arm's-length negotiations under the supervision of Tripper Ortman, Esq., an experienced and well-renowned mediator with expertise in mediating complex wage and hour class actions, the Parties have reached a fair and reasonable class action settlement of Plaintiff's claims. Pursuant to the Settlement Agreement ("Agreement")[3], Plaintiff now requests that the Court enter an order: (1) preliminarily approving the Agreement; (2) certifying two settlement classes only for purposes of settlement under the Agreement; (3) appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and Phoenix Settlement Administrators ("Phoenix") as the Settlement Administrator; (4) approving and directing the mailing of the Class Notices and related materials; and (5) scheduling a final approval hearing on December 16, 2021 or such later date that is available to the Court.

The Agreement provides for a Total Settlement Amount of **$1,500,000** (the "Total Settlement Amount" or "TSA"). (Agreement, § III(A).)  There are two settlement classes under the Agreement: a

---

[1] Google LLC was improperly named in the complaint as Google, Inc.  The Parties have filed a stipulation to file a Fifth Amended Complaint ("5AC") in this action replacing Google LLC for Google, Inc.

[2] These are the parties to this action as of the filing of this Motion.  However, the 5AC also proposes to name Vaco LLC in place of VTS, which stipulation to amend is currently pending Court approval.  When the stipulation is granted, the Defendants will be Vaco LLC and Google LLC.  To the extent that this Motion refers to VTS, it also refers to Vaco LLC, and upon the 5AC being deemed filed, it will thereafter *only* refer to Vaco LLC.  (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 9.)

[3] The executed Agreement between the Parties is attached as **Exhibit "1"** to the Declaration of Shaun Setareh filed concurrently herewith.

"California Class" and a "FLSA Class." (*Id.*, §§ I(D) and I(T).) This TSA is "all-in" and is non-reversionary as to the funds apportioned to the California Class. (*Id.*, § III(B)(2).) No California Class Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. (*Id.*) However, as required under 29 U.S.C. section 216(b), FLSA Class members will have to return an "opt-in" form in order to participate in the settlement. (Agreement, § III(E)(4)(b).) The funds apportioned to the FLSA Class are reversionary to the extent that FLSA Class Members do not opt into the settlement (because Defendants obtain no release for claims of FLSA Class Members who do not opt-in), but only up to a maximum of 10% of the TSA (or $150,000.00). (*Id.*, § III(E)(12).) Any uncashed checks will be held for, or reissued to, Class Members for up to 180 days after first mailed, and thereafter, any remaining unclaimed funds will be distributed to the Law Foundation of Silicon Valley as a *cy pres* recipient. (*Id.*, § III(E)(13).) As estimated by VTS at the time the Agreement was executed, there are an estimated 217 Class Members, split into 110 California Class Members and 107 FLSA Class Members, who worked approximately 10,061 workweeks during the relevant time periods, consisting of 1,752 exempt employee workweeks and 8,309 non-exempt employee workweeks. (Setareh Decl., ¶ 24; Agreement, § III(I).)

The Net Settlement Amount ("NSA") expected to be paid to Class Members – after all Court-approved deductions from the TSA, *i.e.*, Class Counsel fees of $500,000 (1/3 of the TSA) and costs of up to $40,000, settlement administration costs of $7,250, and Plaintiff's enhancement award of $7,500 – is **$945,250**. (Agreement, § III(B)(4).) The average estimated Settlement Share for each Class Member is **$4,356**, assuming no California Class Members opt-out and all FLSA Class Members opt-in.

As discussed below, the Settlement reached here is a good result given the claims at issue in this case, the risk that no class would be certified, Defendants' defenses on the merits, and the significant monetary amount obtained for the Classes, which compares favorably to similar settlements approved by other courts.

///

///

///

///

1    II.    **RELEVANT BACKGROUND**

2          A.     **FACTUAL AND PROCEDURAL BACKGROUND**

3          VTS provides staffing solutions to companies located in the Silicon Valley.  (Setareh Decl., ¶ 5.)

4    This includes the placement of temporary agents on contract projects for tech companies, which could

5    result in short-term or long-term work depending on the project's duration.  (*Id.*)

6          VTS hired Plaintiff on May 12, 2014 and assigned her to work at Google as an Order Audit

7    Operations Specialist ("OAOS").  (Setareh Decl., ¶ 6.)  On May 18, 2015, VTS assigned Plaintiff to

8    work at Google as a Content Bug Technician ("CBT").  (*Id.*)  On September 12, 2015, VTS assigned

9    Plaintiff to work as part of a project for Google Expedition. (*Id.*) Prior to September 2017, VTS

10   classified "Expedition Leads" who oversaw work on the team as exempt from overtime; however,

11   following a claim filed by counsel for Plaintiff here, out of an abundance of caution VTS converted

12   those employees to non-exempt.  (*Id.*)

13         On August 24, 2017, Plaintiff[4] filed suit in Santa Clara Superior Court, asserting the following

14   claims against Defendants[5]: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and

15   1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay

16   Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Indemnify

17   (Lab. Code § 2802); 5) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 6)

18   Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 7) Unfair Competition (Bus. &

19   Prof. Code §§ 17200 *et seq.*); and 8) Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201,

20   *et seq.*). (ECF 1-1, Ex. A.)

21         On September 27, 2017, the Vaco Defendants removed the Action to the U.S. District Court for

22   _____

23         [4] This action essentially continued from where *Trujillo v. Vaco Technology Services, Inc., et
     al.*, Santa Clara Superior Court Case No. 1-15-CV-280846, left off after the plaintiff there settled

24   with Defendants on an individual basis; this action involves the same Defendants, the same counsel
     of record, but a new class representative in Plaintiff.  (Setareh Decl., ¶ 4.)

25
           [5] In the Complaint, VACO TECHNOLOGY SERVICES, LLC, VACO SAN FRANCISCO,

26   LLC, VACO LA JOLLA, LLC, VACO ORANGE COUNTY, LLC, and VACO LOS ANGELES,
     LLC (the "Vaco Defendants") were named. (ECF 1-1, Ex. A.) In the 5AC (pending Court approval)

27   and in the Settlement, Vaco LLC has replaced all the formerly named Vaco Defendants.  (Setareh
     Decl, ¶ 9, Ex. 1.)

28

3

the Northern District of California (the "Northern District").  (ECF 1.)  On October 31, 2017, Plaintiff filed a First Amended Complaint ("FAC") alleging a ninth claim for civil penalties under the California Private Attorneys General Act of 2004 ("PAGA") (Labor Code § 2698, *et seq.*) and narrowing the class definition to just those employees who worked for the Vaco Defendants who were assigned to Google during the class period.  (ECF 20.)    After Google filed a Motion to Dismiss Plaintiff's FAC, the Court issued an order on May 2, 2018, granting Google's motion to dismiss the FAC, with leave to amend, except that Plaintiff's PAGA cause of action was dismissed without leave to amend.  (ECF 44.)

On May 23, 2018, Plaintiff filed a Second Amended Complaint ("SAC") dropping her PAGA claim but keeping all other causes of action. (ECF 47.)  After Defendants filed a Motion to Dismiss Plaintiff's SAC, the Court issued an order, on December 3, 2018, dismissing Plaintiff's SAC with leave to amend. (ECF 60.)

On January 23, 2019, Plaintiff filed a Third Amended Complaint ("TAC"). (ECF 65.)  After Defendants filed a Motion to Dismiss Plaintiff's TAC, the Court issued an order, on July 22, 2019, dismissing the TAC with leave to amend in part and without leave to amend in part. (ECF 85.)

On August 12, 2019, Plaintiff filed a Fourth Amended Complaint ("4AC").  (ECF 87.)  After Defendants filed a Motion to Dismiss Plaintiff's 4AC, the Court issued an order, on February 12, 2020, denying Defendants' motion. (ECF 103.)  On February 26, 2020, Google filed its Answer to the 4AC. (ECF 104.)  On March 11, 2020, VTS did likewise. (ECF 105.)

On August 31, 2020, the Parties participated in a full-day private, arm's-length mediation with Tripper Ortman, Esq., serving as neutral.  (Setareh Decl., ¶ 7.)  Through informal discovery in advance of mediation, Defendants provided Class Counsel with documents, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class.  (*Id.*)

At the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims, and the legal bases for the claims and defenses.  (*Id.*, ¶ 8.)  Ultimately, the Parties agreed to resolve this matter on a class-wide basis and memorialized their agreement in a Memorandum of Agreement, which was signed by the parties on December 3, 2020.  (*Id.*)

NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

1   Following further negotiations, the Parties finalized the long-form Agreement, which the Parties

2   executed on February 1, 2021.  (*Id.*)

3         On February 19, 2021, the Parties filed a stipulation, pursuant to the Agreement, to file a Fifth

4   Amended Complaint ("5AC") to substitute Vaco LLC for the Vaco Defendants in the action.  (*Id.*, ¶ 9.)

5   The 5AC also changes Google's name from "Google, Inc." to "Google LLC."  (*Id.*)  Besides these

6   changes, all substantive portions of the 5AC remain the materially same as those in the 4AC and the

7   references in the Joint Motion to the 4AC will also apply to the 5AC, if and when the Court approves the

8   Parties' Stipulation to file it.  (*Id.*)

9       **B.**     **PLAINTIFF'S CLAIMS AND DEFENDANTS' DEFENSES**

10        Plaintiff alleges that while working as an hourly, non-exempt Order Audit Operation

11  Specialist ("OAOS") and Content Bug Technician ("CBT"), Plaintiff and putative class members

12  were often unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted rest

13  breaks in part due to (1) Defendants' severe understaffing; (2) Defendants' pressuring Plaintiff and

14  class members to remain at their desk; (3) Defendants not having written meal and rest break

15  policies; (4) and Defendants failing to schedule meal and rest breaks.  (*See, generally*, 4AC.)

16  Plaintiff further asserts that Defendants' written meal period and rest break policies were habitually

17  overridden by coercing employees into misrecording their meal periods and altering their timekeeping

18  records to reflect that they were taken when in fact, they were not taken. (*Id.*) Also, Plaintiff alleges

19  employees were required to respond to calls at any time, including during meal periods and rest breaks,

20  that resulted in employees not receiving uninterrupted meal periods and rest breaks due to the pressure of

21  work. (*Id.*)  After transferring to the Google Expedition team and working as a Google Expedition

22  Team Lead, Plaintiff alleges that she was misclassified as exempt in this position. (*Id.*)  Plaintiff

23  alleges that as a Google Expedition Team Lead, Plaintiff and the putative class regularly worked

24  more than ten hours each workday, and more than sixty hours each workweek. (*Id.*) Further,

25  Plaintiff alleges that she and the putative class were paid a fixed salary and were not provided with

26  any designated meal and/or rest periods as they regularly worked through meal and rest periods,

27  were not paid any overtime or double time wages when they worked more than ten hours each

28  workday and more than sixty hours each workweek, and were not reimbursed for any expenses in

1   the discharge of their duties when they drove their personal vehicle to various job sites and were

2   required to charge approximately seventy-five cell phones at home so that they could be used by

3   staff. (*Id*.)  Plaintiff also complains that she was not provided with compliant wage statements (both

4   direct and derivative) and was not paid her final wages on time (derivative).  (*Id*.)

5           Defendants denied all of Plaintiff's allegations.  (Setareh Decl., ¶ 12.)  Initially, VTS provided

6   Plaintiff with time records in electronic format that they contended demonstrate that putative Class

7   Members recorded at least a 30-minute meal break in more than 95.3 percent of their shifts

8   exceeding 5 hours—which Defendants further contended negated plaintiff's allegation that Class

9   Members regularly worked through meal breaks. (*Id*.) To the extent the records show that some non-

10  exempt employees may not have recorded meal breaks in all shifts exceeding 5 hours, Defendants

11  argued there are clearly many variances, demonstrating a lack of common policy or practice, thus

12  precluding class certification. (*Id*.) They also argued that Plaintiff's rest period claim is also not

13  amenable to class treatment as there are too many individualized issues for the same reasons. (*Id*.)

14          As to Plaintiff's time spent as an Expedition employee, Defendants argued that Expedition

15  employees had complete freedom to take breaks at all times and that because they did not work

16  under any supervision, they were thus free to take breaks at their convenience. (*Id*. ¶ 13.) Defendants

17  contended that this included an opportunity for meal periods of at least 30 minutes within the first 5

18  hours of work, and 10-minute rest periods for every 3½ hours of work. (*Id*.) Defendants argued that

19  this would defeat Plaintiff's claims because, under *Brinker Rest. Corp. v. Superior Court*, 53 Cal.

20  4th 1004, 1040 (2012), while an employer must provide employees with the opportunity to take

21  meal and rest breaks, it need not ensure that the employees actually do so; an employer satisfies its

22  obligations if it relieves its employees of all duties, relinquishes control over their activities, and

23  permits them a reasonable opportunity to take uninterrupted breaks. (*Id*.)

24          Defendants further argued that, since Plaintiff's only allegation with respect to OAOSs,

25  CBTs, and non-exempt Expedition employees not being paid all wages due involves these

26  employees allegedly "work[ing] through meal breaks." (4AC, ¶¶ 61, 66), that Plaintiff could not

27  possibly show which non-exempt Google Expedition employees, CBTs, and OAOSs worked

28  through lunch while clocked out with common proof, and for the very same reasons, Plaintiff would

be unable to show whether these non-exempt employees were working off the clock during a meal period.  (Setareh Decl., ¶ 14.)  Defendants also disputed Plaintiff's claim for unpaid wages for alleged misclassification of Expedition Leads since such employees supervised subordinate employees' day-to-day conduct and were involved in reviewing their performance. (*Id.*)  To Plaintiff's allegation that she and other exempt Google Expedition Employees were required to work "**as early as** 8:00 A.M. and to work **as late as** 9:00 P.M. from Monday through Friday," Defendants countered that these were extreme and rare hours, and that Expedition Leads traditionally worked 8 or fewer hours per day, without any regularly recurring overtime, meaning that any unpaid wages for such a claim therefrom would be minimal.  (4AC, ¶ 40; Setareh Decl., ¶ 8.).

Defendants also argued that Plaintiff's Labor Code section 2802 claims fail because VTS reimbursed Expedition employees for their mileage.  (Setareh Decl., ¶ 15.)  They contended that, to the extent Plaintiff claims she incurred increased electricity bills due to a need to charge phones, she could not provide any common proof and that Expedition employees were permitted to and are alleged to have charged phones at the schools themselves. (*Id.*) Finally, Defendants contended that because Plaintiff's wage statement, final pay, and UCL claims are entirely derivative of the other claims in this matter, they too would fail for the same reasons. (*Id.*)

## C.   PLAINTIFF'S ASSESSMENT OF DAMAGES

The following chart provides the estimated potential recovery on a class basis that Plaintiff believes she could reasonably achieve *if she were to prevail on all her claims*:

| **Plaintiff's Estimated Potential Recovery** | | |
|---|---|---|
| Putative Class Members: 217 total = 110 Non-Exempt + 107 Misclassified Non-Exempt ("MCE") Total Workweeks: 10,061 = [MCE] 1,752 + [Non-Exempt] 8,309 Avg. Reg. Rate: [MCE] $15.81; [Non-Exempt] $25.32 Avg. OT Rate: [MCE] $23.72; [Non-Exempt] $37.98 | | |
| **Claim** | **Estimated Potential Recovery** | **Calculations for Estimated Potential Recovery** |
| Off-the-Clock (MCE) | $831,148.80 | 1,752 workweeks x 20 hrs/week off-the-clock x $23.72/hr Avg. MCE OT rate |
| Meal Period Premiums | $1,070,010.81 | (8,633 meal period eligible shifts [MCE] x $15.81/hr Avg. Reg. rate [MCE] x 100% viol. Rate) + (36,869 meal |

| | | |
|---|---|---|
| | | period eligible shifts [Non-Exempt] x $25.32/hr Avg. Reg. rate [Non-Exempt] x 100% viol. Rate) |
| Rest Period Premiums | $1,091,177.85 | (8,665 rest period eligible shifts [MCE] x $15.81/hr Avg. Reg. rate [MCE] x 100% viol. Rate) + (37,685 rest period eligible shifts [Non-Exempt] x $25.32/hr Avg. Reg. rate [Non-Exempt] x 100% viol. Rate) |
| Late Pay (Labor Code § 203) Penalties | $1,121,580.00 | (97 terminated during class period [MCE] x $15.81/hr Avg. Reg. rate [MCE] x 8 hours x 30 days) + (124 terminated during class period [Non-Exempt] x $25.32/hr Avg. Reg. rate [Non-Exempt] x 8 hours x 30 days) |
| Wage Statement (Labor Code § 226) Penalties | $214,950.00 | (61 pay periods during the relevant time period x $50 for first violation x 100% violation rate) + (2,498 subsequent pay periods during the relevant time period x $100 for each subsequent violation [maximum penalty of $4,000 per person] x 100% violation rate) |
| Expense Reimbursement (Google Expedition Class) | $129,011.46 | (13,871 shifts x 15 miles driven per shift x applicable mileage reimbursement rate) + (696.44 month count during the entire class period x $20 monthly electric bill for equipment charging) |
| **Total Potential Recovery** | **$4,457,878.92** | |

(Setareh Decl., ¶ 23.)  However, Defendants contend that Plaintiff would not have recovered any of these amounts, due to their defenses and the likelihood that the Court would not certify class claims. (*Id.*, ¶¶12-15.)

## III.   THE SETTLEMENT

The following is a summary of the material terms of the Settlement:

### A.   THE SETTLEMENT CLASSES

The classes to be conditionally certified for settlement are defined as:

**California Class**: all persons employed by Vaco in California who were assigned to work at Google in any of the roles of Order Audit Operation Specialist, Content Bug Technician, Expedition Associate, and/or Expedition Team Lead, at any time from August 12, 2013 through the date of preliminary court approval of the Settlement.  (Agreement, § I(D).)

**FLSA Class**: all persons employed by Vaco in the United States, but outside of California, who were assigned to work at Google in the position of Expedition Associate and/or Expedition Team Lead at any time from August 12, 2014 through the date of preliminary court approval of the Settlement.  (*Id*, § I(T).)

## B.    TOTAL SETTLEMENT AMOUNT AND DISTRIBUTIONS

Defendants will pay a maximum aggregate TSA of **$1,500,000**. (Agreement, §§ I(EE) and III(A).)  The TSA covers: (1) the Class Representative payment of **$7,500** to Plaintiff in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded (*Id*, § III(C)(1)); (2) Settlement Payment paid to Class Members for their class claims (*Id*, § III(B)(1)); (3) the Class Members' respective shares of any applicable payroll taxes (including but not limited to Class Members' FICA and FUTA contributions and any other taxes) attributable to any payments under the Settlement (*Id*, § III(B)(4)); (4) the Class Counsel Award, consisting of attorneys' fees not to exceed **$500,000** (1/3 of the TSA), plus costs not to exceed **$40,000**, to compensate Class Counsel for all work performed thus far and all work remaining to be performed in connection with the Settlement, including without limitation documenting and administering the Settlement and securing Court approval (*Id*, §§ I(H) and III(C)(2)); and (5) the fees and expenses of the Settlement Administrator, expected not to exceed **$7,250** (*Id.,* §§ III(C)(3) and (D); Setareh Decl. ¶ 46.).

After all Court-approved deductions from the TSA, it is estimated that the NSA payable to Class Members, including related tax payments but excluding Defendants' portion of tax payments, will be **$945,250** out of the **$1,500,000** TSA.  To fairly allocate settlement funds based on each Class Member's dates of employment as a Class Member, the distribution amount will be calculated as follows: each Participating Class Member (*i.e.*, California Class Members who do not opt out and those FLSA Class Members who opt in to the Agreement pursuant to its procedures (Agreement, § I(Z)) will receive a payment equal to the NSA times the ratio of (i) the number of Covered Workweeks that he or she worked to (ii) the total number of Covered Workweeks worked by all Class Members. (*Id.*, at § III(B)(1).)  For the California Class, the number of Covered Workweeks will be measured from August 12, 2013 to the date of preliminary court approval of the Agreement; for the FLSA Class, the number of Covered Workweeks will be measured from August 12, 2014 to the date of preliminary court approval of the Settlement.  (*Id.*)  To calculate the estimated Settlement Share reported to Class Members in the Notice of Estimated Settlement Award, it will be assumed that no California Class Members opt out or request exclusion and that all FLSA Class Members opt into the Settlement. (*Id.*)

In the event that more than **$945,250** remains in the NSA after payment of the Class Counsel

9

fees and costs, Class Representative Payment, and Settlement Administrator's fees and costs, then the class Settlement Shares allocated to Class Members, will be increased on a *pro rata* basis, in proportion to the amounts estimated above.  (*Id.*, ¶ I(X).)  Finally, if the actual number of Covered Workweeks is ten percent (10%) or more greater than the aggregate of 1,752 exempt employee workweeks and 8,309 non-exempt employee workweeks, the TSA will increase on a *pro rata* basis equal to the increase in class size.  (*Id.*, ¶ III(I).)

### C.   SCOPE OF THE CLASS MEMBER RELEASES

In consideration for their Settlement Shares, as of the date the Settlement becomes Final (as defined in Agreement section I(R)), each California Class Member who did not timely and properly opt out of the Agreement, shall release any and all known and unknown claims against Vaco LLC, Google LLC, and any of their present and former parents, subsidiaries and affiliated companies or entities, and their respective officers, directors, employees, partners, members, shareholders and agents, and any other successors, assigns and legal representatives and their related persons and entities (collectively, "Released Parties"), based on the facts alleged in the operative complaint, including that from August 12, 2013 through the date on which the Court grants preliminary approval of the Settlement, Defendants failed to provide meal periods; provide rest periods; pay hourly wages; pay overtime compensation; indemnify employees for business expenses; provide accurate itemized wage statements; and pay all wages due to discharged and quitting employees.  The released claims include but are not limited to claims brought under California Labor Code sections 201, 202, 203, 204, 223, 226, 226.7, 510, 512, 1194, 1194.2, 1197, 1197.1, 1198, 2802, California Business and Professions Code sections 17200-17208, and the Industrial Welfare Commission Wage Orders.  (Agreement, § III(F)(2).)

In consideration for their Settlement Shares, as of the date the Settlement becomes Final (as defined in Agreement section I(R)), each FLSA Class Member who timely and properly opted into the Agreement, shall be deemed to have fully, finally, and forever released the Released Parties any and all known and unknown claims that arise out of the allegations that, from August 12, 2014 through the date on which the Court grants preliminary approval of the Settlement, Defendants failed to pay for all hours worked; failed to pay overtime wages; and failed to keep accurate records of all hours worked.  The released claims include but are not limited to claims under the Fair Labor Standards Act (FLSA), 29

1   U.S.C. §§ 201 *et seq.*, and any similar federal, state, municipal or local laws.  (Agreement, § III(F)(3).)

2       **D.**    **NOTICE PROCEDURES**

3       If appointed by the Court, Phoenix, serving as Settlement Administrator, will mail to all Class

4   Members a Class Notice Packet based upon whether they are a Member of the California and/or FLSA

5   Class containing a Class Notice (completed to reflect the order granting preliminary approval of the

6   Settlement) based upon their last-known address provided by Defendants. (Agreement, § III(E)(3)(a).)

7   The proposed California Class Notice and FLSA Class Notice are attached as **Exhibits "A"** and **"C,"**

8   respectively, to the Agreement. The Class Notices will, among other things, provide Class Members with

9   information regarding the Action and a summary of the Settlement's principal terms, including without

10   limitation allocation of the TSA. (*Id.*, § III(E)(3), Exs. A and C.)  Each Class Notice also will inform the

11   Class Members of their rights and the manner and deadline to dispute the data in the Notice of Estimated

12   Settlement Award form (*e.g.*, Workweeks worked or updated contact information) or object to the

13   Settlement.  (*Id.*)  The Class Notices will also inform Class Members of the claims to be released. (*Id.*)

14   The Class Notice to the California Class Members will also advise that that they may opt out of the

15   Settlement by following the opt-out procedures stated therein.  (*Id.*, § III(E)(4)(c), Ex. A.)  The Class

16   Notice to the FLSA Class Members will advise that that they may opt into the Settlement by following

17   the opt-in procedures contained therein and will include a Consent to Join Settlement Form that they may

18   use to do so.  (*Id.*, § III(E)(4)(b), Exs. C and E.)

19       Within 30 days after preliminary approval of the Settlement is granted by the Court, Defendants

20   will provide the Settlement Administrator each Class Member's name, last known mailing address, last

21   known telephone number, Social Security Number, the number of Workweeks attributable to the Class

22   Member as part of the California Class and/or the FLSA Class as reflected in Defendants' records during

23   the relevant period. (*Id.*, § III(E)(3)(a).)

24       No later than 15 calendar days after receipt of such address information, the Settlement

25   Administrator will mail the Class Notices and Notice of Estimated Settlement Award forms (attached as

26   Exhibits A-D to the Agreement) and, with respect to each FLSA Class Member, a Consent to Join

27   Settlement form (attached as Exhibit E to the Agreement) to each Class Member by first-class mail,

28   postage prepaid. (*Id.*, §§ III(D) and (E)(3)(a), Exs. A-E.)

1    All Class Members will have 45 calendar days after the Class Notice Packets are first mailed (the

2    "Response Deadline") to object to the Settlement or to dispute the information in the Notice of Estimated

3    Settlement Award form.  (*Id.*, §§ III(E)(4)(a) and III(E)(5).)  California Class Members will have until

4    the Response Deadline to elect not to participate in the Settlement (*i.e.*, opt out or request exclusion).

5    (*Id.*, § III(E)(4)(c).)  Any California Class Member who does not timely return a properly completed

6    request for exclusion will remain in the California Class and be bound by the Settlement (including

7    payment of their applicable Settlement Share and release of the Released Claims).  (*Id.*)  FLSA Class

8    Members will have until the Response Deadline to complete and submit a claims form, the Consent to

9    Joint Settlement Form (*i.e.*, opt in or request inclusion).  (*Id.*, §§ III(E)(4)(b).)  Any FLSA Class Member

10   who does not timely return a properly completed claims form will be excluded from the FLSA Class and

11   be deemed to waive any right to participate in the Action and the Settlement.  (*Id.*)

12   If a Class Notice Packet is returned because of an incorrect address and no forwarding address is

13   affixed thereto, the Settlement Administrator will promptly, and not later than 5 business days from

14   receipt of the returned packet, search for a more current address for the Class Member using a skip trace,

15   and re-mail the Class Notice Packet to the Class Member.  (*Id.*, § III(E)(4)(c).)  The Settlement

16   Administrator will use the Class Members' data and otherwise work with Defendants to find a more

17   current address. (*Id.*)  The Settlement Administrator will be responsible for taking reasonable steps,

18   consistent with its agreed-upon job parameters, court orders, and fee, to trace the mailing address of any

19   Class Member for whom a Class Notice Packet is returned as undeliverable, including, at a minimum,

20   tracking of all undelivered mail, performing address searches for all mail returned without a forwarding

21   address, and prompt re-mailing to Class Members for whom new addresses are found.  (*Id.*)

22   If 5% or more of the California Class Members, or a number of them whose Settlement Shares

23   represent 5% or more of the total of all Settlement Shares, timely opt out of the Settlement, then

24   Defendants will have the right to rescind the Settlement not later than 15 days after the Settlement

25   Administrator notifies the Parties of the number of valid opt-outs.  (*Id.*, § III(E)(7).)

26   **E.       PAYMENT OF SETTLEMENT AMOUNTS**

27   Within 3 days after the Settlement becomes Final, the Settlement Administrator will provide

28   Vaco LLC with wire transfer information. (*Id.*, § III(E)(11).)  Within 20 days thereafter, Vaco LLC will

12

1  transfer the TSA to the Settlement Administrator via wire transfer.  (*Id.*)  Within 7 days of receipt, the

2  Settlement Administrator will pay to Class Members the Settlement Shares; to Plaintiff, the Class

3  Representative Payment; to Class Counsel, the Class Counsel Fees and Expenses Payment; and to the

4  Settlement Administrator, its reasonable fees and expenses.  (*Id.*)

5       Class Members must cash their Settlement Share checks within 180 calendar days after they are

6  mailed.  (*Id.*, § III(E)(13).)  If a check is returned, the Settlement Administrator will make all reasonable

7  efforts to re-mail it to the Class Member at the correct address.  (*Id.*)  If any Class Member's Settlement

8  Share check is not cashed within 120 days after its last mailing to the Class Member, the Settlement

9  Administrator will send the Class Member a letter or postcard informing him or her that unless the check

10  is cashed in the next 60 days, it will expire and become non-negotiable, and offer to replace the check if

11  it was lost or misplaced but not cashed.  (*Id.*)  If a Class Member fails to cash the check for his or her

12  Settlement Share within 180 days after it is mailed, the Settlement Administrator will cancel the check(s)

13  and distribute those funds to the Law Foundation of Silicon Valley as a *cy pres* recipient.  (*Id.*)

14       Estimated Settlement Shares are calculated assuming that all FLSA Class Members opt into the

15  Settlement.  (*Id.*, § III(E)(12).)  However, Settlement checks will only be sent to Participating Class

16  Members.  (*Id.*)  For those FLSA Class Members who do not consent to participation by submitting a

17  claim form, the Settlement Administrator shall return to Vaco LLC the money attributable to the checks

18  for those persons. (*Id.*)  However, this reversion shall not exceed 10% of the TSA.  (*Id.*)  Any reversion

19  amount in excess of 10% will remain in the NSA.  (*Id.*)

20  **E.     TAX TREATMENT**

21       Pursuant to the Agreement, each California Class Member's Settlement Share will be treated

22  as follows for tax purposes: 33% will represent payment in settlement and compromise of wages

23  allegedly owed and will be reported by the Settlement Administrator on an IRS Form W-2, and 66%

24  will represent payment in settlement and compromise of alleged interest and penalties and will be

25  reported by the Settlement Administrator on an IRS Form 1099.  (§ III(B)(4)(a).)  Each FLSA Class

26  Member's Settlement Share will be treated as follows for tax purposes: 50% will represent payment

27  in settlement and compromise of wages allegedly owed and will be reported by the Settlement

28  Administrator on an IRS Form W-2, and 50% will represent payment in settlement and compromise

1   of liquidated damages and will be reported by the Settlement Administrator on an IRS Form 1099.

2   (§ III(B)(4)(b).)

3   **IV.   THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL**

4          The law favors settlement, particularly in class actions and other complex cases where substantial

5   resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on*

6   *Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of*

7   *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

8   Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the

9   approval of the court.  Fed. R. Civ. P. 23(e).

10          Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined

11   procedures and specific criteria for settlement approval in class action settlements, described in the

12   *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The *Manual*'s

13   settlement approval procedure describes three distinct steps: (1) Preliminary approval of the proposed

14   settlement at an informal hearing; (2) Dissemination of mailed and/or published notice of the settlement

15   to all affected class members; and (3) A "formal fairness hearing," or final settlement approval hearing,

16   at which class members may be heard regarding the settlement, and at which evidence and argument

17   concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Id.*, § 30.41.

18   The procedure, commonly used by federal courts and endorsed by the leading class action commentator,

19   Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the

20   court to fulfill its role as the guardian of class interests.  *See Newberg*, § 11.22 *et seq*.  Federal Rule of

21   Civil Procedure Rule 23(e) requires the Court to review and approve a proposed voluntary dismissal,

22   settlement, or other compromise of a certified class's claims.  The Ninth Circuit has held that Rule 23(e)

23   also applies to settlements before certification, but in a much lighter form that does not entail "the kind of

24   substantive oversight required when reviewing a settlement binding upon the class."  *Diaz v. Trust*

25   *Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989).  Although there has been "some

26   uncertainty" about whether this holding applies in the wake of the 2003 amendments to Rule 23(e), *see,*

27   *e.g., Lyons v. Bank of Am., NA,* No. C 11-1232 CW, 2012 WL 5940846, at *1, n.1 (N.D. Cal. Nov. 27,

28   2012), courts in this district continue to follow *Diaz* to evaluate the proposed settlement and dismissal of

putative class claims, *see, e.g., Tombline v. Wells Fargo, NA,* No. 13-cv-04567-JD, 2014 WL 5140048, at *2 (N.D. Cal. Oct. 10, 2014).  *See also Luo v. Zynga Inc.*, No. 13-cv-00186 NC, 2014 WL 457742, at **3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to proposed settlement of putative class claims under FLSA and state law).

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (citation omitted).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile.  To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as the "reasonable range." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*,, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the proposed class (or collective) is appropriate:  "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement proposed by the parties meets the standards for preliminary approval.

**A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS**

This District promulgated *Procedural Guidance for Class Action Settlements*, which instructs that "[t]he motion for preliminary approval should state," among other things, the following:

///

15

NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

1.   **Any Differences Between the Settlement Class and the Class Proposed in the Operative Complaint or Between the Claims Released in the Settlement and Those Pled in the Operative Complaint**

The 4AC is currently the operative complaint in this Action until such time as the 5AC is deemed filed.  (Setareh Decl., ¶ 9.)  The Settlement Classes have been tailored to conform to the class definitions that were ordered by the Court in its Order Denying Defendants' Motion to Dismiss or, In the Alternative, to Strike Class Claims from the 4AC ("4AC Order").  (*See* ECF 103.)  The Court noted that Plaintiff had withdrawn the national classes pled in the 4AC as to the OAOS and CBT classes and that Defendants had not opposed the withdrawal and further denied the remainder of Defendants' Motion. (*Id.*)  Accordingly, the Settlement Classes reflect the definitions of the Classes as defined by the Court's 4AC Order.

Likewise, the same claims pled in the 5AC will be released, including those known and unknown, that are based on the same facts alleged in the 5AC.  (Agreement, §§ III(F)(2)-(3).)

2.   **Estimate of the Number and /or Percentage of Class Members Expected to Submit a Claim**

Plaintiff estimates, based upon the settlement administration quote submitted by Phoenix, a 50% claim form return rate with respect to the FLSA Class.  (Setareh Decl., ¶ 18.)  With respect to the rest of the Settlement, i.e., the California Class, there is absolutely no reversion of any portion of the Settlement proceeds.  (*Id.*, § III(E)(12).)  It should be noted that the revertible amount is limited – only an amount up to the equivalent of 10% of the TSA may be reverted to Vaco LLC for FLSA claims that were not opted into, with any further amount beyond that remaining in the NSA for distribution pursuant to the terms of the Settlement.  (*Id.*)

3.   **Settlement Administration**

Plaintiff obtained bids from potential third-party settlement administrators Phoenix, Simpluris, Inc. and JND Legal Administration.  (Setareh Decl., ¶ 45.)  Phoenix was selected because they submitted the lowest bid of $7,250, which Class Counsel believes is reasonable in light of Class Counsel's experience in such settlement administration matters and given the work to be done by or potentially required of the Settlement Administrator due to the various Settlement provisions. (*Id.*)  The proposed forms of Class Notice to all putative Class Members were specified to be sent by first-class U.S. mail,

16

1   and where returned as undeliverable, running such addresses through the U.S. Postal Service NCOA

2   database, using Accurint, and other reasonable cost-effective skip trace methods to obtain current address

3   information.  (Agreement, § III(D).)  Over the last two years, Plaintiff's counsel has engaged with

4   Phoenix 20 times in 20 class actions.  (Setareh Decl., ¶ 46.)  The TSA is to be deposited by Vaco into an

5   account established by the Settlement Administrator with all authorized Settlement payments, including

6   Settlement Administration fees and costs, to be paid out of this fund. (Agreement, § III(E)(11).)

7   ### 4.   Class Counsel's Lodestar and Multiplier Sought[6]

8   The Class Counsel Award requested by Plaintiff is reasonable and fair because the lodestar for

9   the work performed is $281,346.25 with a multiplier sought of 1.78 would result in an amount of

10   $500,000. (Setareh Decl., ¶ 37.)  The hourly rates are consistent with the prevailing market rates for

11   attorneys of similar experience.  (*Id.*)

12   The Class Counsel fee award amount of up to $500,000 accurately reflects the Parties' intent that

13   Class Counsel shall seek no more than this amount in fees.  (Agreement, § III(C)(2).)  This amount is

14   equivalent to one-third (1/3) of the TSA.  (Setareh Decl., ¶ 17.)

15   ### a.   A Reasonable Result Was Achieved on Behalf of the Class

16   The benefit achieved on behalf of Class Members defines a primary yardstick against which any

17   fee motion is measured.  *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft*

18   *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts recognize that arm's-length negotiations

19   conducted by competent counsel are prima facie evidence of fair settlements.  As the United States

20   Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum

21   available if one can assume that parties of equal knowledge and negotiating skill agreed upon the

22   figure through arm's-length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

23   The Parties reached a Settlement in good faith after negotiating at arm's length with a

24   professional mediator skilled in resolving class action cases including wage and hour actions.  (Setareh

25   Decl., ¶¶ 7-16, 22-24.)  The Parties thoroughly investigated and evaluated the factual and legal

26

27   ---

28   [6] Defendants take no position regarding the approval of attorneys' fees and Plaintiff's incentive
award, but do not oppose the requests.

NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

1    strengths and weaknesses of this case before reaching the Settlement.  (*Id.*)  The Settlement was

2    reached after extensive investigation and research, thorough calculations and risk evaluation,

3    multiple discovery requests, correspondence between Class Counsel and Defendants' counsel,

4    informal exchanges of data and documents—including an evaluation of Class Members' payroll and

5    timekeeping data during the Covered Period—and an exchange of information required to evaluate

6    all potential defenses and damages. With the information produced by Defendants, and the additional

7    detailed data with respect to the class produced for mediation, it was sufficient to permit Plaintiff's

8    counsel to adequately evaluate the Settlement. (*Id.*)  And, notably, approval of a class action settlement

9    does not require that discovery be exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*,

10   497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the

11   parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from

12   arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is

13   fair." *Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal.

14   Jul. 18, 1997).

15       Furthermore, the Parties only attended mediation after significant motion practice at the pleading

16   stage, through no less than three consecutive and fully briefed Motions to Dismiss filed by Defendants as

17   to the first three complaints, resulting in the filing of the 4AC, which now precisely traces the contours of

18   the putative classes according to the Court's 4AC Order.  The 5AC is identical to the 4AC in all regards

19   other than substituting Vaco LLC for the Vaco Defendants and changing the name of Google from

20   "Google, Inc." to "Google LLC."  (Setareh Decl., ¶ 9.)  This increases the likelihood that the proposed

21   Settlement is sufficiently tailored to the Class and the claims in this action, as it was thoroughly shaped

22   and arrived at through the adversarial process.

23       With respect to the claims asserted on behalf of the settlement Classes in this case, there are

24   significant risks that support the reduced compromise amount (see estimated potential recovery in

25   Section II.C., *supra*.).  (Setareh Decl., ¶ 22.)  These risks include, but are not limited to the following:

26       (i)       The risk that Plaintiff would not be able to prove liability for alleged failure to provide

27   compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant

28   meal periods and rest breaks would require an individualized inquiry that would prevent these issues

from being resolved on a class and/or collective basis.  For example, Plaintiff alleged that Defendants did not maintain accurate records of the start and end times for meal periods taken by employees, instead, Plaintiff alleged employees regularly worked through their meal periods (and rest breaks) in order to complete their job duties within the timeframe allotted by Defendants.  Defendants countered with proof that most employees took their meal periods and rest breaks and that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class and/or collective basis.  (*Id.*)

(ii)      The risk that Plaintiff would be unable to establish liability for alleged unpaid straight time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), *citing Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) (dismissing certified off-the-clock claims based on proof at trial).  Defendants have contended, for example, that Plaintiff's allegations for unpaid wages are not subject to common proof since they are based on Plaintiff's allegation that non-exempt employees worked through meal breaks.  Further, as to Plaintiff's overtime claim, Defendants have contended that Expedition Leads traditionally worked 8 hours or less per day, without any regularly recurring overtime, and that in any event, Plaintiff will be unable to demonstrate that she was misclassified as exempt because she exercised supervisory responsibilities over issues such as scheduling and providing input regarding hiring, firing and discipline. (Setareh Decl. ¶ 22.)

(iii)     The risk that Plaintiff would not recover waiting time and wage statement penalties pursuant to Labor Code sections 203 and 226.  For example, there is currently a split of authority as to whether such penalties can be obtained based on failure to provide meal breaks.  *See, e.g.*, *Singletary v. Teavana Corporation*, No. 5:13-cv-01163-PSG, 2014 WL 1760884, *4 (N.D. Cal. May 2, 2014) (noting that "the case law on this question is murky at best" and holding that section 203 penalties are not applicable to meal and rest break claims).  Plaintiff also might not prove that Defendants acted with the intent necessary for the alleged claims for penalties under Labor Code sections 203 and 226. Specifically, section 203 requires that a plaintiff show the employer committed a "willful" violation of the law in withholding wages.  "A good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  8 Cal. Code Regs. § 13520.  Similarly, penalties pursuant to

19

1    section 226 require a "knowing and intentional" violation.  Defendants contend that they would present

2    several good faith defenses that would preclude a finding of willfulness under section 203.  *See Choate v.*

3    *Celite Corp.*, 215 Cal.App.4th 1460 (2013) (reversing award of section 203 penalties based on good faith

4    defense where underlying wage claim presented issue of first impression).  Any such good faith dispute

5    could preclude penalties.  (Setareh Decl. ¶ 22.)

6         (iv)    The risk that Defendants' challenged employment policies and practices might not

7    ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n.

8    28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as

9    to ultimate viability of proposition).  Defendants have contended, for example, that it did not have a

10   purported policy of not paying required compensation, but rather a policy of paying compensation and of

11   requiring employees to report any unpaid compensable time, and that any failures to report by employees

12   cannot be legally charged to Defendants and in any event involve such highly individualized

13   circumstances as to prevent class and collective certification should this case be litigated.  *See, e.g.*,

14   *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not required to pay employees

15   for time spent performing work of which the employer had no knowledge).  (Setareh Decl. ¶ 22.)

16        (v)    For the same reasons, liability, damages recovery, and certification risks are heightened

17   given: (1) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and

18   practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2)

19   the risk that individual differences between settlement Class Members could be construed as pertaining

20   to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class or

21   collective treatment could be deemed improper as to one or more claims except for settlement purposes.

22   (Setareh Decl. ¶ 22.)

23        (vi)    The risk that lengthy appellate litigation could ensue as to both liability and certification

24   issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

25   opposed to unpredictable litigation.  (Setareh Decl., ¶ 22.)

26        In these respects, Defendants strongly deny any liability and the propriety of class certification

27   for any reason other than settlement.  *(Id.,* ¶¶ 12-16.)  Continued litigation of this lawsuit presented

28   Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to

1    assess.  (*Id*., ¶ 22.)

2          In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

3    reasonable recovery for the settlement Class Members.  (*Id*.)  The Settlement amount is, of course, a

4    compromise figure.  (*Id*.)  By necessity, it took into account risks related to liability, damages, class

5    action certification, and all the defenses asserted by the Defendants as to all such matters.  (*Id*.)

6    Moreover, each Class Member will be given the opportunity to opt out of the Settlement, allowing those

7    who feel they have claims that are greater than the benefits they can receive under this Settlement to

8    pursue their own claims.  (*Id*.)

9          There are an estimated 217 Class Members, split into 110 California Class Members and 107

10   FLSA Class Members, with respect to the Settlement.  (Setareh Decl., ¶ 24.)  With 217 persons in the

11   settlement classes, the average total recovery for each class member is approximately **$4,356**.  (*Id*.)  This

12   amount reflects a fair compromise well within the range of reasonableness.  (*Id*.)  Given the strong case

13   that Defendants could bring to bear to challenge certification and liability, this is not an inconsequential

14   sum in these challenging economic times.  (*Id*.)  And, confirming the fundamental fairness of the

15   Settlement, each Class Member will be compensated based on the number of Workweeks they worked

16   during the applicable Class Period.  (Agreement, § III(B)(1).)

17                    **b.      The Experience, Reputation, and Ability of Class Counsel**

18         California law also recognizes the "skill and experience of attorneys" as appropriate criteria for

19   evaluating a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995);

20   *accord In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ("skill and efficiency of the

21   attorneys" among fee motion criteria); *In re Heritage Bond Litig*., No. 02-ML-1475-DT (RCx), 2005

22   U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Class Counsel's

23   effort, experience and skill").  Class Counsel has had substantial experience with the causes of action

24   here and has regularly litigated employment law class and collective actions.  (Setareh Decl., ¶¶ 27-36.)

25                    **c.      The Effort Required by the Litigation Justifies the Fee**

26         California and federal law also look to the time and labor required in connection with the

27   litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*,

28   20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims,

1    Class Counsel expended substantial effort to reach the Settlement. (Setareh Decl. ¶¶ 7-16, 22-24, 39-42.)

2         Class counsel expended considerable time and resources in litigating this matter. (*Id.*) The work

3    done by the attorneys working on this case includes communicating with Plaintiff, drafting pleadings,

4    propounding multiple sets of interrogatories and comprehensive requests for production to Defendants,

5    reviewing documents produced by Defendants, working up and drafting a mediation brief, working with

6    an expert to analyze the data produced by Defendants, attending a mediation session with a mediator

7    experienced in resolving wage and hour class actions, drafting a motion for preliminary approval, and

8    drafting supplemental papers in support of the motion for preliminary approval.  (*Id.*, ¶ 38.)  The "time

9    and labor" criterion weighs in favor of an award of the requested fees.

10              **d.       The Complexity of the Legal and Factual Issues**

11        California law recognizes that the litigation's general complexity and "difficulty of the questions

12   involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord*

13   *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001).  Complexity of legal issues was

14   moderate here, though the fee is reasonable, rendering this factor neutral.

15              **e.       Class Counsel Assumed Substantial Risk**

16        The novelty and challenges presented by a class and collective action, as well as the

17   corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly

18   evaluated in connection with a fee motion.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at

19   1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and

20   California state courts regard circumstances in which class counsel's work is wholly contingent – as is

21   the case here – as a factor weighing in favor of approving a negotiated fee award that approximates

22   market rates.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001).  Because of the uncertainty of the

23   outcome in this and other wage and hour litigation undertaken by Plaintiff's counsel, they took this case

24   with the expectation that a risk enhancement, either in the form of a lodestar multiplier or a percentage of

25   the fund award equivalent thereto, would be available if Plaintiff prevailed. This expectation stems from

26   the fact that many cases undertaken by Plaintiff's counsel as putative class actions do not resolve

27   successfully.

28   ///

### 5.   Notice Pursuant to the Class Action Fairness Act of 2005

Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the appropriate federal and state officials is required in this action because this action is a class action and was removed from state court pursuant to the CAFA removal provisions.  28 U.S.C. §§ 1332(d), 1453(b).  Defendants will provide notice to the appropriate governmental officials within 10 days of the Parties filing the Motion for Preliminary Approval of Class Action Settlement.  (Agreement, § III(E)(2)(b).)  Pursuant to 28 U.S.C. § 1715(b), the Court may not issue an order granting final approval of the parties' Settlement earlier than 90 calendar days after the later of the dates on which the appropriate federal official and state officials are served with notice of the proposed Settlement.

### 6.   Plaintiff's Incentive Award

Here, Plaintiff seeks an Enhancement Payments that may not exceed $7,500.00. (Setareh Decl., ¶ 43.)  This amount is very reasonable given the risks undertaken by Plaintiff her involvement in the Action.  Taking the risk of filing a lawsuit against an employer, particularly one of the magnitude of Defendants, deserves recognition, especially in light of the settlement achieved by Plaintiff. Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action, expending considerable effort in advancing the interests of the classes, including travelling and participating in a day-long mediation session.  Plaintiff provided information to counsel before the filing of this matter; she assisted with mediation (which included conferring with counsel during the preparation of Plaintiff's mediation brief and attendance at the mediation itself); and regularly conferred with her counsel regarding the case whenever questions arose. Plaintiff's Counsel estimates that Plaintiff contributed more than 40 hours of her time to the prosecution of this matter.

Plaintiff also faces significant stigma for having filed a federal class action because such records are easily available online to prospective employers who conduct an online search on a job applicant. This, in addition to Plaintiff's significant contributions to this case, justifies the $7,500 enhancement sought on her behalf.

### 7.   Past Distributions

This information is provided in the Declaration of Shaun Setareh at paragraph 52.

///

23

### B.   THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of Tripper Ortman, Esq., a mediator with significant experience mediating employment wage and hour class and collective actions, a few months after a full-day mediation on August 31, 2020. (Setareh Decl., ¶¶ 7-16, 22-24.)  As discussed in greater detail above, the Parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. (*Id.*) Plaintiff's counsel also retained an expert who reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations.  (*Id.*)  The Parties were able to come to an agreement during the meditation and signed a Memorandum of Understanding on December 3, 2020.  (*Id.*, ¶ 8.)  Accordingly, the Settlement is the product of non-collusive negotiations.

### C.   THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

The Settlement is substantial and non-reversionary and provides for a payment of **$1,500,000** by Defendants, which is, by any account, a significant amount given the value of the claims made by Plaintiff. (Setareh Decl., ¶ 12.)  The Settlement Payment for each Class Member asserting wage and hour claims will be based on the individual Workweek count for each Class Member divided by the total number of Workweeks for all Class Members, which is a fair way to calculate what each Class Member should receive. (Agreement, § III(B)(1).)  If all other amounts sought are awarded, it is estimated that, before taxes, the average Class Member will receive approximately **$4,356**.  (Setareh Decl., ¶ 24.)

Defendants do not oppose the Class Representative Service Award (**$7,500**) or the Class Counsel Award (up to **$500,000** in fees plus up to **$40,000** in costs), and regardless, they are subject to Court approval at the Final Approval hearing.  (Agreement,§§ III(C)(1)-(2), (E)(8).)

### D.   THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendants and applicable law, Plaintiff's counsel determined that the value of their claims to be approximately $4,457,878.92.

(Setareh Decl., ¶ 23.)  Therefore, the settlement amount is approximately 33.6% of the Class-wide damages.  This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes") (citation and internal quotation marks omitted).

The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

### 1.   Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief

Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendant.  (Setareh Decl., ¶¶ 7-16, 19-24, 38.)  Plaintiff's counsel propounded discovery, reviewed Defendants' written policies, including employee manuals and thoroughly reviewed a database of timekeeping and payroll data to create a reliable damage model detailing the number of possible violations at issue.  (*Id.*)

For its part, Defendants contest liability in the action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

To be sure, if the litigation proceeds, Defendants could face significant liability.  However, while Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or legal developments could seriously diminish the value of her and the Class Members' claims.

In light of these risks for all Parties, the Settlement provides the Class Members with a sizeable recovery while mitigating all Parties' risk if the matter were to proceed. (*Id.*) As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the Classes in light of all known facts and

25

circumstances, including the risk of the significant delay.  (*Id.*)  The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and contested pre-certification class action lawsuit from this Court's calendar.  (*Id.*)

**2.      The Class Release Is Appropriate Given Plaintiff's Claims**

As described above, as part of the Settlement, Class Members will release all claims based on or arising from the facts pled in the complaint.  (Agreement, § III(F).)  These released claims appropriately track the breadth of Plaintiff's allegations in the Action.  (*Id.*)

And, of course, California Class Members have the right to opt out of the Settlement by submitting a Request for Exclusion as described in the Class Notice.  (*Id.*, § III(E)(4)(c).)  If they do so, they will not release any claims but, of course, also will not share in the recovery in that event.  FLSA Class Members will have to submit a Consent to Join Settlement Form in order to be able to participate in the Settlement and will only release claims under the Settlement if they do so.  (*Id.*, § III(E)(4)(b).)

**3.      Class Counsel's Fees Sought Are Consistent with Prevailing Market Rates**

As more fully explained above in Section IV(A)(4)(a)-(e), the Class Counsel Award requested by Plaintiff is reasonable and fair, because the lodestar for the work performed is $$281,346.25 with a multiplier sought of 1.78 would result in an amount close to the fee award being requested by Plaintiff's counsel. (Setareh Decl., ¶ 37.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar experience.  (*Id.*)

The Class Counsel fee amount of up to **$500,000** accurately reflects the Parties' intent that Class Counsel shall seek no more than this amount in fees.  This amount is equivalent to 1/3 of the TSA. (*Id.*)

**E.      CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE**

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate

26

1  here as all the factors Rule 23 requirements are met.

2      **1.  The Numerosity Requirement Is Met**

3      The numerosity requirement is met if the class is so large that joinder of all members would be

4  impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal.

5  1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  No specified number of members of class is needed to

6  maintain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d

7  648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on*

8  *other grounds* 40 F.3d 1155 (11th Cir. 1994); *McNeill v. New York City Housing Authority*, 719 F.Supp.

9  233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth*

10  *Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d

11  748 (4th Cir. 1976); *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983).  However,

12  numerosity is generally presumed for purposes of class action certification when the proposed class

13  would have at least 40 members.  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

14      Here, the estimated count of approximately 217 Class Members satisfies the numerosity

15  requirement.  (Setareh Decl., ¶ 24.)

16      **2.  Commonality and Typicality Requirements**

17      Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

18  The commonality requirement has been construed permissively; not all questions of law and fact need to

19  be common.  *Hanlon*, 150 F.3d at 1019.  Here, Plaintiff alleges that her claims involve common

20  questions of both fact and law regarding Defendants' alleged failure to abide by state and federal wage-

21  and-hour law—and Defendants will not object to Plaintiff's position on this issue solely for the purposes

22  of the Settlement.  (Setareh Decl., ¶ 48.)

23      Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims

24  of the members of the class."  *Fry*, 198 F.R.D. at 468.  "Under the rule's permissive standards,

25  representative claims are 'typical' if they are reasonably coextensive with those of absent Class

26  Members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiff contends

27  – and, for purposes of the Settlement only, Defendants will not object to Plaintiff's position – that

28  Plaintiff's respective claims are essentially identical to all other non-exempt employees as described in

1  the California and FLSA Classes provided in the Settlement and her claims are typical of such workers

2  with the same common issues.  (Setareh Decl., ¶ 47.)

3        **3.**      <u>**Adequacy of Representation**</u>

4        To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show:

5  "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class

6  vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the

7  individual's claims and those asserted on behalf of the class."  *Fry*, 198 F.R.D. at 469.  For purposes of

8  the Settlement only, Defendants will not challenge Plaintiff's claim that the adequacy of representation

9  requirement is met here because Plaintiff claims she has the same interests as the Settlement Classes,

10  there is no conflict between her claims and those of the other Class Members, and Plaintiff is represented

11  by experienced and competent counsel who have substantial experience in litigating wage-and-hour class

12  actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh

13  Decl., ¶¶ 27-36, 50.)

14        **4.**      <u>**Class Certification For Settlement Purposes Is Proper Under Rule 23(b)(3)**</u>

15        In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a

16  showing that certification for settlement purposes is proper under one of the three requirements of Rule

17  23(b).  Here, Defendants agree not to dispute, for purposes of the Settlement only, that certification of the

18  Class is appropriate under Rule 23(b)(3) based on Plaintiff's claim in the settlement context that

19  "questions of law or fact common to class members predominate over any questions affecting only

20  individual members, and…a class action is superior to other available methods for fairly and efficiently

21  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  (Setareh Decl., ¶¶ 49, 51.)

22        **F.**      **THE NOTICE PACKET IS FAIR AND ADEQUATE**

23        "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*,

24  150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of

25  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

26  forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)

27  (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980).

28        Here, the Class Notices and Notice of Estimated Settlement Award (Exhibits A-D to the

1   Settlement) and the manner of notice are "the best notice practicable" as required under Rule

2   23(c)(2)(B).  All Class Members can be identified, and the Class Notice Packet (including the Class

3   Notice and Noticed of Estimated Settlement Award) will be mailed directly to each Class Member using

4   First-Class U.S. Mail. (Agreement, §§ III(D) and III(E)(3)(b).)  The Class Notices adequately inform

5   Class Members of the nature of the litigation, the essential terms of the Settlement, his or her estimated

6   Settlement Payment and other payments (if any), and how to object to, elect not to participate in the

7   Settlement (for California Class Members), elect to participate in the Settlement (for FLSA Class

8   Members), or correct the information on which his or her Settlement Payment or other payment (as

9   applicable) is calculated.  (*Id.*, § III(C)(4)(b), Exs. A-E.)  Further, the Class Notices identify Class

10  Counsel, specifies the amounts of the Class Representative Service Award, the Class Counsel Award

11  that Plaintiff will seek, and explains how to obtain additional information regarding the Action and the

12  Settlement. (*Id.*, Exs. A and C.)

13         The Class Notice and other materials will be mailed by the Settlement Administrator within 15

14  calendar days following Defendants' delivery of the Class Members' Data.  (*Id.*, § III(E)(3)(b).)  The

15  Settlement Administrator will attempt to locate any Class Members whose Class Notices are returned as

16  undeliverable.  (*Id.*, § III(E)(3)(c).)   In sum, the procedures set forth in the Settlement provide the best

17  possible notice to the Class Members.

18         **G.     PHOENIX SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR**

19         The Parties propose that the Court appoint Phoenix to serve as the Settlement Administrator.

20  Phoenix is experienced in administering wage-and-hour class action settlements and is regularly

21  appointed as a claims administrator by California courts to administer settlements.  Over the last two

22  years, Class Counsel have engaged with Phoenix 20 times in 20 class actions.  (Setareh Decl., ¶ 46.)

23  Phoenix's capped fees and costs for administration of the Settlement to 217 class members is $7,250.

24  (Setareh Decl., ¶ 45.)  The Parties agree that these estimates are reasonable and adequate to provide the

25  necessary notice of the Settlement to the estimated 217 Class Members, while maximizing the NSA

26  distributed to the Classes.  (*Id.*)  Class Counsel will provide an updated settlement administration

27  expense estimate, if any such adjustment is necessary at the time the Parties file the motion for final

28  approval of the Settlement.  (*Id.*)

## H.   RESIDUAL

Other than any reverted amounts due to unexercised elections to participate by FLSA Class Members, the entire TSA will be paid out, meaning that, at minimum, 90% of the TSA will be disbursed. (Agreement, § III(E)(12).)  Settlement checks that remain uncashed after more than 180 calendar days following the checks' issuance will be paid to the Law Foundation of Silicon Valley as a *cy pres* recipient. (*Id.*, § III(E)(13).)

## I.   PROPOSED SCHEDULE

The Parties propose the following schedule for approval of the Settlement, which assumes that preliminary approval of the Settlement is granted on July 15, 2021:

| Date | Event |
|---|---|
| August 14, 2021 | Defendants to provide to Settlement Administrator database containing Class Member information necessary to calculate Settlement Payment (30 calendar days after Preliminary Approval) |
| August 29, 2021 | Settlement Administrator to mail Class Notice Packets to all Class Members (15 calendar days after receiving Class Member information from Defendants) |
| October 13, 2021 | (45 calendar days after Class Notice Packets are mailed to Class Members) |
| October 13, 2021 | Last day for Class Members to submit Objections, Requests for Exclusion, and Data Dispute Forms to the Settlement Administrator (45 calendar days after Settlement Administrator mails Class Notice Packets to all Class Members), subject to extension provisions of Settlement Agreement |
| October 23, 2021 | Date by which Settlement Administrator will provide Parties with a list of all Class Members who submitted timely and valid Request for Exclusion Forms (10 calendar days after the deadline for submitting exclusions), subject to extension provisions of Settlement Agreement |
| November 15, 2021 | Date by which Settlement Administrator will file declaration certifying that notice packets have been mailed under the provisions of the Settlement Agreement (30 calendar days before the final approval hearing) |
| November 25, 2021 | Date by which Plaintiff and Settlement Administrator will file with the Court a summary of objections received and Plaintiff's responses thereto (21 calendar days before the final approval hearing) |
| December 1, 2021 | Date by which the Parties will submit their motion for final approval of Settlement; Date by which Plaintiff and Class Counsel will submit their motion for Class Representative Service Award and Class Counsel Award (15 calendar days before the Final Approval Hearing) |
| December 9, 2021 | Date by which the parties must file responsive documents to any objections (5 business days before the final approval hearing). This is also the deadline to submit objections as allowed under provisions of the Settlement Agreement |
| December 16, 2021 | Hearing on Plaintiff's motion for final approval of Settlement (not less than 90 calendar days after order preliminarily approving Settlement) |

1  **V.      CONCLUSION**

2          For the reasons set forth above, the Parties respectfully request that the Court grant their joint

3  motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class; (2) granting

4  preliminary approval of the Settlement; (3) appointing Plaintiff as the Class Representative;

5  (4) appointing Setareh Law Group as Class Counsel; (5) approving and directing the mailing of the Class

6  Notices and related materials; (6) appointing Phoenix as the Settlement Administrator; and

7  (7) scheduling the final approval hearing for December 16, 2021, as soon thereafter as is available and

8  convenient for the Court.

9

10  DATED:  February 19, 2021          SETAREH LAW GROUP

11                                              */s/ Shaun Setareh*
                                                SHAUN SETAREH
12                                              THOMAS SEGAL
                                                FARRAH GRANT
13                                              Attorneys for Plaintiff
                                                CHRISTIANA BUSH
14

15  DATED:  February 19, 2021          FORD & HARRISON LLP

16                                              */s/ Daniel B. Chammas*
                                                DANIEL B. CHAMMAS
17                                              Attorneys for Defendant
                                                VACO TECHNOLOGY SERVICES LLC
18

19

20  DATED:  February 19, 2021          PAUL HASTINGS LLP

21                                              */s/ Zachary P. Hutton*
                                                ZACHARY P. HUTTON
22                                              Attorneys for Defendant
                                                GOOGLE LLC
23

24

25

26

27

28

31