1   Shaun Setareh (Cal. State Bar No. 204514)
       shaun@setarehlaw.com
2   Thomas Segal (Cal. State Bar No. 222791)
       thomas@setarehlaw.com
3   Jose Maria D. Patino, Jr. (Cal. State Bar No. 270194)
       jose@setarehlaw.com
4   SETAREH LAW GROUP
    9665 Wilshire Boulevard, Suite 430
5   Beverly Hills, California 90212
    Telephone (310) 888-7771
6   Facsimile (310) 888-0109

7   Attorneys for Plaintiff
    CHRISTIANA BUSH
8
    [*Additional counsel listed on next page*]
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14   CHRISTIANA BUSH, on behalf of herself, all    Case No. 5:17-cv-05605-BLF
     others similarly situated, and the general public,
15                                                  **NOTICE OF JOINT MOTION AND JOINT
                                                    MOTION FOR FINAL APPROVAL OF CLASS
16              *Plaintiff*,                        ACTION SETTLEMENT AND
                                                    CERTIFICATION OF SETTLEMENT
17       vs.                                        CLASSES; MEMORANDUM OF POINTS AND
                                                    AUTHORITIES IN SUPPORT THEREOF**
18   VACO LLC, a Tennessee limited liability
     company; GOOGLE LLC, a Delaware limited        [*Filed Concurrently with the Declaration of Daniel B.
19   liability company; and DOES 1 to 50, inclusive, Chammas, Supplemental and Second Supplemental
                                                    Declarations of Taylor Mitzner, and [Proposed]*
20                                                  *Order*]
21              *Defendants*.
                                                    Date:    April 21, 2022
22                                                  Time:    9:00 a.m.
                                                    Place:   Courtroom 3
23                                                  Judge:   Hon. Beth Labson Freeman

24                                                  Action Filed:        August 24, 2017
                                                    Date of Removal:     September 27, 2017
25                                                  5th Am. Complaint:   February 22, 2021

26

27

28
                                                    NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
                                                    OF CLASS SETTLEMENT; MEMO ISO
                                                    U.S.D.C., N.D. Cal., No. 5:17-cv-05605-BLF

Daniel B. Chammas (SBN 204825)
FORD & HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401
dchammas@fordharrison.com

Attorneys for Defendant
VACO LLC

Zachary P. Hutton (SBN 234737)
Paul A. Holton (SBN 313047)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
zachhutton@paulhastings.com
paulholton@paulhastings.com

Attorneys for Defendant
GOOGLE LLC

# TABLE OF CONTENTS

*Page*

Table of Authorities.........................................................................................................ii

NOTICE OF JOINT MOTION AND JOINT MOTION ...........................................1

MEMORANDUM IN SUPPORT OF JOINT MOTION .........................................1

I.      INTRODUCTION/SUMMARY OF ARGUMENT .............................1

II.     BACKGROUND .....................................................................................2

III.    THE SETTLEMENT ..............................................................................5

    A.    The Settlement Class.....................................................................5

    B.    Notice Process................................................................................5

    C.    Maximum Settlement Amount and Distributions..................................7

    D.    Scope of the Class Member Releases.....................................................8

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL...........................9

    A.    The Best Practical Notice of Settlement Has Been Provided to the Class. .............................9

    B.    The CAFA Notice Requirements Have Been Satisfied. .......................................10

    C.    Final Approval Standards under Rule 23. .......................................10

    D.    The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations. ..........................................11

        1.    Class Members' Response to the Settlement Is Positive.............................11

        2.    The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues...........................................12

        3.    Counsel's Endorsement of the Settlement Is Entitled to Great Weight. ...................12

        4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations. ...............................................12

        5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation. .........................................13

            a.    The Value of the Settlement Favors Final Approval.....................................13

            b.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members. ..........................................14

V.      CONCLUSION .....................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3  *Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 10, 11

4  *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) ................................................ 4

5  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................. 11

6  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................. 13

7  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) .................................. 2, 10

8  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ........................................ 10, 11

9  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................... 9

10  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................ 13

11  *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ............................. 13

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 10, 11

13  *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ............................ 12

14  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................... 11

15  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................. 11

16  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........................................... 12

17  *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) .................... 11

18  *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) ................................. 11

19  *Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014) ........................ 13

20  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................... 9

21  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................ 11

22  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................ 9, 10, 12

23  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................................................ 10

24  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......................................................... 8

25  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................... 11

26  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) .................................................. 2, 10

27  *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ................................. 13

28  *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013) ................................................ 12

(*cont'd*)

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................................ 10

**STATUTES**

28 U.S.C. § 1715 .......................................................................................................... 9

Fed. R. Civ. P. 23 ................................................................................................... 2, 10

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) .......................... 12

LEGAL_US_W # 100612458.2

1

## NOTICE OF JOINT MOTION AND JOINT MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on April 21, 2022 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of this Court, located at 280 South First Street, 4th Floor, San Jose, CA 95113, before the Honorable Beth Labson Freeman, plaintiff Christiana Bush ("Plaintiff") and defendants Vaco LLC ("Vaco") and Google LLC ("Google") (Vaco and Google, collectively, "Defendants") (Plaintiff and Defendants, collectively, the "Parties"), hereby jointly do and will move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' Amended Settlement Agreement (the "Settlement") (ECF 129 at 5-62), and entry of judgment in accordance with the Settlement.

The Parties make this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiff and the Class, and counsel for Defendants, is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement was made), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying declarations of Taylor Mitzner[1] and Daniel B. Chammas in support of this motion; the proposed form of Order Granting Joint Motion for Final Approval of Class and Collective Action Settlement; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

## MEMORANDUM IN SUPPORT OF JOINT MOTION

## I.    INTRODUCTION/SUMMARY OF ARGUMENT

The Parties' settlement of this wage-and-hour class action and Fair Labor Standards Act ("FLSA") collective action (the "Settlement") meets the criteria for final approval.  The Settlement fairly resolves Plaintiff's claims that Defendants violated California wage-and-hour laws and the FLSA by failing to pay her and the settlement classes for off-the-clock work; provide them with compliant meal and rest periods;

---

[1] Taylor Mitzner, the Case Manager assigned to this case by Phoenix Settlement Administrators, the Court-approved Settlement Administrator, submitted two declarations regarding the status of the Class Notice procedure and Settlement administration, a Supplemental Declaration dated December 20, 2021 and a Second Supplemental Declaration dated March 15, 2022.  These have been filed concurrently with this Motion and are both referenced herein.

1    reimburse them for required expenses; provide them with compliant wage statements; and pay their final wages

2    on time.  The Settlement is the product of arm's-length negotiations by experienced counsel after significant

3    discovery, and recognition of the strengths and weaknesses of each side's positions.  The Settlement has

4    received the overwhelming support of the Class, with not a single objection to the Settlement made.

5         The Settlement, in the amount of $1,500,000, readily satisfies the Rule 23 standard of being "fair,

6    reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Specifically:

7    ▪    Class Counsel (who are highly experienced handling complex wage-and-hour class and

8         collective actions) conducted sufficient discovery to enable them to adequately evaluate the

9         claims and defenses in the action before agreeing to the Settlement.  (ECF 136-1, ¶¶ 31-32.)

10   ▪    The Settlement is consistent with the strengths and weaknesses of Plaintiff's claims given the

11        risk, expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*,

12        327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th

13        Cir. 1992).

14   ▪    The Class responded overwhelmingly favorably to the Settlement.    The Settlement

15        Administrator received **no** complete and timely opt-out requests and **no** objections from the

16        201 Class Members who received notice of the Settlement.  (Second Supplemental Declaration

17        of Taylor Mitzner Re: Status of Class Notice and Settlement Administration ("2nd Supp.

18        Mitzner Decl."), ¶ 3.)

19        Thus, the Parties respectfully submit that final approval of the Settlement should be granted and

20   judgment entered accordingly.

21   **II.    BACKGROUND**

22        At the times relevant to the action, Vaco provided staffing solutions to companies located in the Silicon

23   Valley, including Google.  During the applicable limitations period here, Vaco estimates that it employed

24   approximately 203 non-exempt employees at Google as Order Audit Operations Specialists ("OAOS") or

25   Content Bug Technicians ("CBT") in California or as Expedition Associates or Expedition Team Leads in the

26   United States.[2]

27   _____

     [2]    At the time the parties filed their Joint Motion for Preliminary Approval of Settlement (ECF 117),
28   Vaco believed that the Class Member estimate was 217.  However, following the Court's order approving
     the Settlement, Vaco finalized its class data, and the total number of Class Members was 201.

Plaintiff alleges that while working as an hourly, non-exempt OAOS and CBT, Plaintiff and putative class members were often unable to take 30-minute uninterrupted meal breaks and 10-minute uninterrupted rest breaks in part due to (1) Defendants' severe understaffing; (2) Defendants' pressuring Plaintiff and class members to remain at their desk; (3) Defendants not having written meal and rest break policies; (4) and Defendants failing to schedule meal and rest breaks. (*See, generally*, ECF 127.) Plaintiff further asserts that Defendants' written meal period and rest break policies were habitually overridden by coercing employees into misrecording their meal periods and altering their timekeeping records to reflect that they were taken when in fact, they were not taken. (*Id.*) Also, Plaintiff alleges employees were required to respond to calls at any time, including during meal periods and rest breaks, that resulted in employees not receiving uninterrupted meal periods and rest breaks due to the pressure of work. (*Id.*) After transferring to the Google Expedition team and working as a Google Expedition Team Lead, Plaintiff alleges that she was misclassified as exempt in this position. (*Id.*) Plaintiff alleges that as a Google Expedition Team Lead, Plaintiff and the putative class regularly worked more than ten hours each workday and more than sixty hours each workweek. (*Id.*) Further, Plaintiff alleges that she and the putative class were paid a fixed salary and were not provided with any designated meal and/or rest periods as they regularly worked through meal and rest periods, were not paid any overtime or double time wages when they worked more than ten hours each workday and more than sixty hours each workweek, and were not reimbursed for any expenses in the discharge of their duties when they drove their personal vehicle to various job sites and were required to charge approximately seventy-five cell phones at home so that they could be used by staff. (*Id.*) Plaintiff also complains that she was not provided with compliant wage statements (both direct and derivative) and was not paid her final wages on time (derivative). (*Id.*)

Defendants denied (and continue to deny) plaintiffs' allegations. (ECF 118, ¶ 12.) Initially, Vaco contended that its time records showed compliant meal breaks, negating plaintiff's allegation that Class Members regularly worked through meal breaks. (*Id.*) To the extent the records show otherwise, Defendants

---

(Declaration of Daniel B. Chammas in Support of Joint Motion for Final Approval of Proposed Class Action Settlement ("Chammas Decl."), ¶ 2.) Subsequently, 2 more class members were added after they advised the Settlement Administrator that they were part of the class, and the Parties approved their addition. (2nd Supp. Mitzner Decl., ¶ 4.)

argued there is a lack of common policy or practice, which precludes class certification. (*Id.*) They also argued that Plaintiff's rest period claim involves too many individualized issues for class treatment. (*Id.*).

As to Expedition employees, Defendants argued that they had complete freedom to take breaks at all times because they did not work under any supervision, which would include opportunity for meal periods of at least 30 minutes within the first 5 hours of work, and 10-minute rest periods for every 3½ hours of work, and, under *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1040 (2012), while an employer must provide employees with the opportunity to take meal and rest breaks, it need not ensure that the employees actually do so; an employer satisfies its obligations if it relieves its employees of all duties, relinquishes control over their activities, and permits them a reasonable opportunity to take uninterrupted breaks. (*Id.*, ¶ 13.)

Defendants further argued that Plaintiff could not possibly show which non-exempt Google Expedition employees, CBTs, and OAOSs worked through lunch while clocked out or were working off the clock during a meal period with common proof. (*Id.*, ¶ 14.) Defendants also disputed Plaintiff's claim for unpaid wages for alleged misclassification of Expedition Leads since such employees supervised subordinate employees' day-to-day conduct and were involved in reviewing their performance. (*Id.*) Defendants further argued that Expedition Leads traditionally worked 8 or fewer hours per day, without any regularly recurring overtime, meaning that any unpaid wages for such a claim would be minimal. (*Id.*)

Defendants also argued that Plaintiff's Labor Code section 2802 claims fail because Vaco reimbursed Expedition employees for their mileage. (*Id.*, ¶ 15.) They contended that, to the extent Plaintiff claims she incurred increased electricity bills due to a need to charge phones, she could not provide any common proof and that Expedition employees were further permitted to charge phones at the schools themselves. (*Id.*) Finally, Defendants contended that because Plaintiff's wage statement, final pay, and UCL claims are entirely derivative of the other claims in this matter, they too would fail for the same reasons. (*Id.*)

In the course of the litigation and in advance of mediation, the Parties produced documents to each other, including Defendants' timekeeping and payroll data and relevant written policies, such as employee manuals.

As described in the Parties' Joint Motion for Preliminary Approval of Settlement, the Settlement was only reached after a lengthy negotiation process. (ECF 117.) The Parties participated in a mediation with Francis "Tripper" Ortman, Esq., a nationally recognized mediator, on August 31, 2020. (ECF 118, ¶ 7.) At

the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims, and the legal bases for the claims and defenses. (*Id.*, ¶ 8.) Ultimately, the Parties agreed to resolve this matter on a class-wide basis and memorialized their agreement in a Memorandum of Agreement, which was signed by the parties on December 3, 2020. (*Id.*)

As part of the settlement, the Parties filed a stipulation for leave so that Plaintiff could file her Fifth Amended Complaint ("5AC"), to add the current legal names of the Defendants, "Vaco LLC" and "Google LLC." (ECF 116.) The Court granted the Parties' stipulation on February 22, 2021. (ECF 120.)

During the July 15, 2021 hearing on the Parties' Joint Preliminary Approval Motion, the Court asked the Parties to consider certain changes to the Parties' Settlement Agreement and Class Notices. (ECF 129.) The parties did so. (*Id.*) On September 9, 2021, the Court granted preliminary approval of the Amended Settlement Agreement (the "Settlement"). (ECF 133.)

In its order, the Court found that the terms of the Settlement to be "within the range of reasonableness of a settlement that could be granted approval by the Court at a Final Approval Hearing." (*Id.*, ¶ 1.)

## III.   THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

### A.   The Settlement Class.

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Classes were certified:

- **California Class**: All persons employed by Vaco in California, who were assigned to work at Google in any of the roles of Order Audit Operation Specialist, Content Bug Technician, Expedition Associate, and/or Expedition Team Lead, at any time from August 12, 2013 through the date of preliminary court approval of the Settlement.

- **Expedition FLSA Class**: All persons employed by Vaco in the United States, who were assigned to work at Google in the position of Expedition Associate and/or Expedition Team Lead, at any time from August 12, 2014 through the date of preliminary court approval of the Settlement.

(ECF 133, ¶ 1.) There are a total of 203 Class Members. (Supp. Mitzner Decl., ¶ 4.)

### B.   Notice Process

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement and appointed Phoenix Settlement Administrators ("Phoenix"), to administer the Settlement. (ECF 133.) The Parties implemented the Court's directions in this regard. Taylor Mitzner with Phoenix was

1    designated as project manager for the administration of the Settlement.  (ECF 136-3, ¶ 1.)

2          On October 12, 2021, counsel for Defendants provided Phoenix with a data file from Defense Counsel

3    containing the first and last names, last known mailing addresses, telephone numbers, Social Security numbers,

4    hire and termination dates, number of weeks worked during the Class Period, and job titles for each Class

5    Member during the Class Period. (*Id.*, ¶ 3.)  The final class list contained 201 Class Members representing

6    8,546 weeks worked. (*Id.*)  Specifically, 65 were California Class Members, 135 were Expedition FLSA Class

7    Members, and 1 Class Member was eligible for both Classes.  (*Id.*)

8           On October 22, 2021, Phoenix conducted a National Change of Address ("NCOA") search in an

9    attempt to update the class list of addresses as accurately as possible. (*Id.*, ¶ 4.)  Phoenix then mailed that same

10   day the Notice Packet, each of which contained a *Notice of Class Action Settlement* and *Settlement Award*

11   *Form*, via U.S. first class mail in English only to all 201 Class Members on the Class List. (*Id.*, ¶ 5, Ex. A.)

12   Members of the Expedition FLSA Subclass were also mailed a Consent Form.  (*Id.*, ¶ 5, Ex. B.)

13         As of December 22, 2021:

14   •    25 Notice Packets have been returned to Phoenix. (Supplemental Declaration of Taylor Mitzner Re:

15        Status of Class Notice and Settlement Administration ("Supp. Mitzner Decl.", ¶ 3.)  1 Notice Packet

16        was returned with a forwarding address and was promptly re-mailed. (*Id.*)  For the 24 Notice Packets

17        returned without a forwarding address, Phoenix attempted to locate a current mailing address using

18        TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. (*Id.*)

19        Of the 24 Notice Packets that were skip traced, 22 updated addresses were obtained, and the Notice

20        Packet was promptly re-mailed to those Class Members via first class mail.  (*Id.*)  2 Notice Packets

21        (approximately 0.99% of the total) are considered undeliverable as an updated address could not be

22        obtained by skip tracing.  (*Id.*, ¶ 4.)

23   •    The Expedition FLSA Class Members represent $222,753.59 of the Net Settlement Fund. $89,284.98

24        of this amount has been claimed by Expedition FLSA Class Members who submitted an Opt-In.

25        Pursuant to the Agreement, Vaco will retain any unclaimed FLSA funds up to 10% of the TSA. It is

26        estimated that $133,468.61 will be retained by Vaco.

27   ///

28   ///

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-05605-BLF

As of March 15, 2022:

- Phoenix has received 34 Opt-Ins from Expedition FLSA Class Members. (Supp. Mitzner Decl., ¶ 5, 2nd Supp. Mitzner Decl., ¶ 2.)  The Response Deadline was December 6, 2021.  (*Id.*)

- Phoenix has received <u>no</u> Opt-Outs.  (2nd Supp. Mitzner Decl., ¶ 3.)  The Response Deadline was December 6, 2021.  (*Id.*)

- Phoenix has received <u>no</u> Objections.  (*Id.*, ¶ 3.)  The Response Deadline was December 6, 2021.  (*Id.*)

- Phoenix also provided updates that 2 individuals, who were not included in the Settlement Class List, requested inclusion in the Class.  (Chammas Decl., ¶ 4; 2nd Supp. Mitzner Decl., ¶ 4.)  Vaco investigated the matter, and the Parties agreed to include the 2 individuals in the Class, bringing the total number of class members to 203.  (*Id.*)

- The highest individual settlement payment to be paid will be approximately $23,267.22, and the lowest individual settlement payment to be paid will be approximately $90.53, with the average individual settlement payment to be paid being approximately $7,145.29.  (*Id.*, ¶ 3.)

## C.    Maximum Settlement Amount and Distributions.

The Settlement creates a Total Settlement Amount ("TSA") of $1,500,000.00.  (ECF 129 at 9, § III.A.)  The TSA covers (1) class representative payment of $7,500 to plaintiff in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the Class Counsel Fees and Expenses Payment of not more than $500,000 (1/3 of the TSA), plus costs not to exceed $40,000, to compensate plaintiffs' counsel for all work performed thus far and all work remaining to be performed in documenting and administrating the Settlement and securing Court approval; (4) the fees and expenses of the Settlement Administrator, estimated not to exceed $7,250.  (Supp. Mitzner Decl., ¶ 9)  Class Counsel are only seeking $15,941.94 in costs.  (ECF 136-1, ¶ 20.)  After all court-approved deductions from the TSA, and accounting for the actual costs sought for reimbursement in lieu of the maximum allowed, the Net Settlement Amount of $969,308.06 is available to pay the Class Members' Settlement Shares before taxes.  (*See* ECF 136-1, ¶ 14.)

To fairly allocate settlement funds based on each Class Member's dates of employment as a Class Member, the distribution amount will be calculated as follows: each Participating Class Member (*i.e.*, California Class Members who do not opt out and those Expedition FLSA Class Members who opt in to the

1    Agreement pursuant to its procedures (Agreement, § I(Z)) will receive a payment equal to the NSA times the

2    ratio of (i) the number of Covered Workweeks that he or she worked to (ii) the total number of Covered

3    Workweeks worked by all Class Members. (*Id.*, at § III(B)(1).)  For the California Class, the number of

4    Covered Workweeks will be measured from August 12, 2013 to the date of preliminary court approval of the

5    Agreement; for the FLSA Class, the number of Covered Workweeks will be measured from August 12, 2014

6    to the date of preliminary court approval of the Settlement.  (*Id.*)  To calculate the estimated Settlement Share

7    reported to Class Members in the Notice of Estimated Settlement Award, it was assumed that no California

8    Class Members opt out or request exclusion and that all FLSA Class Members opt into the Settlement. (*Id.*)

9         Up to 10% of TSA may revert to Defendants for claims no longer payable to Expedition FLSA Class

10   Members who fail to opt into the FLSA claim.  (ECF 129, Ex. 1, § III.E.12.)  Settlement checks that are

11   uncashed after 180 days and additional notice to the Class Members will be paid to the Law Foundation of

12   Silicon Valley as a *cy pres* recipient.  (*Id.*, § III.E.13.)

13            **D.    Scope of the Class Member Releases.**

14        <u>California Class</u>. In consideration for their awarded Settlement Shares, as of the date the Settlement

15   becomes Final, all California Class Members (other than those California Class Members who timely and

16   validly elected not to participate in the Settlement) release any and all known and unknown claims against

17   Vaco, Google, and the Released Parties based on the facts alleged in the operative complaint, including that

18   from August 12, 2013 through the date on which the Court grants preliminary approval of the Settlement,

19   Defendants failed to provide meal periods; provide rest periods; pay hourly wages; pay overtime

20   compensation; indemnify employees for business expenses; provide accurate itemized wage statements; and

21   pay all wages due to discharged and quitting employees. (*Id.*, § III.F.2.) The released claims include but are

22   not limited to claims brought under California Labor Code sections 201, 202, 203, 204, 223, 226, 226.7, 510,

23   512, 1194, 1194.2, 1197, 1197.1, 1198, 2802, California Business and Professions Code sections 17200-

24   17208, and the Industrial Welfare Commission Wage Orders. Such claims include claims for wages, statutory

25   penalties, civil penalties, or other relief under the California Labor Code and any other related state or

26   municipal law; relief from unfair competition under California Business and Professions Code section 17200

27   *et seq.*; attorneys' fees and costs; and interest, and waives the protection of California Civil Code section 1542

28   with respect to such claims.  (*Id.*)

1   Expedition FLSA Class. In consideration for their awarded Settlement Shares, as of the date the

2   Settlement becomes Final, all employees who are Expedition FLSA Class Members who timely submitted

3   Consent to Join Settlement Forms release any and all known and unknown claims against Vaco, Google and

4   the Released Parties that arise out of the allegations that, from August 12, 2014 through the date on which the

5   Court grants preliminary approval of the Settlement, Defendants failed to pay for all hours worked; failed to

6   pay overtime wages; and failed to keep accurate records of all hours worked. (*Id.*, § III.F.3.) The released

7   claims include but are not limited to claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et*

8   *seq.*, and any similar federal, state, municipal or local laws. Such claims include claims for wages, statutory or

9   civil penalties, liquidated damages, interest, other relief, and claims for attorneys' fees and costs. (*Id.*)

10   **IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL**

11       **A.    The Best Practical Notice of Settlement Has Been Provided to the Class.**

12       The mailing of the Notice of Proposed Class and Collective Action Settlement and Final Approval

13   Hearing, Notice of Estimated Settlement Award, and Consent to Joint Settlement Form to Class Members

14   (collectively, the "Class Notices"), and the general administration of the notice process as described above,

15   meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process

16   rights of Class Members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best

17   practicable" notice with description of litigation and explanation of opt-out rights satisfies due process).

18   Indeed, individual Class Notices were served on each Class Member at his or her most recent address, after

19   cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated

20   website that included the and other Settlement-related information. Moreover, the Class Notices informed

21   Class Members of the pendency of the action and their right not to participate in the Settlement. *See Mullane*

22   *v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is

23   "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

24   and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine

25   the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent

26   Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval

27   process.

28       This lack of governmental objection to the Settlement further supports final approval.

**B.    The CAFA Notice Requirements Have Been Satisfied.**

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), Defendants provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States of Arizona, California, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, North Carolina, Nebraska, New Jersey, New Mexico, Nevada, New York, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin. (Chammas Decl., ¶ 5.)  "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).  To date, no federal or state official has raised such concerns. (Chammas Decl., ¶ 5.)

**C.    Final Approval Standards under Rule 23.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned").  On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'"  *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The court should balance "the strength of

plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

> ### D. The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations.

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

> ### 1. Class Members' Response to the Settlement Is Positive.

Out of 203 Class Members, not a single Class Member objected to the Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, <u>no</u> Class Members opted out of the Settlement.

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.

1    *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16

2    of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low,

3    there is presumption of favorable class reaction).

### 2.     The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

6           The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement

7    in this case.  *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that

8    touchstone of analysis is whether "the parties have sufficient information to make an informed decision about

9    settlement," including formal and informal discovery) (citation omitted).  Before any mediation, Class Counsel

10   reviewed hundreds of pages of documents, as well as payroll and timekeeping data, produced by Defendants.

11   (ECF 136-1, ¶¶ 30-31.)  The Parties also spent significant time preparing for, and taking part, in mediation.

### 3.     Counsel's Endorsement of the Settlement Is Entitled to Great Weight.

13          The judgment of experienced counsel regarding the settlement is entitled to great weight.  *Hanlon*, 150

14   F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised

15   on the fact that "parties represented by competent counsel are better positioned than courts to produce a

16   settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez v. West Publ'g Corp.*,

17   563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

18          Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable.  Counsel each

19   have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one.  (ECF

20   136-1, ¶¶ 4-15.)  The fact that qualified and well-informed counsel endorse the Settlement as being fair,

21   reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.     The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.

24          As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced,

25   competent counsel equipped with enough information to act intelligently.  *See Tijero v. Aaron Bros., Inc.*, 301

26   F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation,

27   settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist.

28   LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class

settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation.  (ECF 118, ¶ 7.)  Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence.  (*Id.*)

### 5. The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

#### a. The Value of the Settlement Favors Final Approval.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a [...] speculative measure of what *might* have been achieved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$1,500,000—is a fair and reasonable result, especially in light of the defenses raised by Defendants, including its assertions that that most employees took their meal periods and rest breaks and that any inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class and/or collective basis.  (ECF 118, ¶ 22.)  Defendants also assert that Expedition Leads traditionally worked 8 hours or less per day, without any regularly recurring overtime, and that in any event, Plaintiff will be unable to demonstrate that she was misclassified as exempt because she exercised supervisory responsibilities over issues such as scheduling and providing input regarding hiring, firing and discipline.  (*Id.*)  Defendants have contended, for example, that they did not have a purported policy of not paying required compensation, but rather a policy of

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMO ISO U.S.D.C., N.D. Cal., No. 5:17-cv-05605-BLF

1   paying compensation and of requiring employees to report any unpaid compensable time, and that any failures

2   to report by employees cannot be legally charged to Defendants and in any event involve such highly

3   individualized circumstances as to prevent class and collective certification should this case be litigated. (*Id.*)

4       Moreover, the TSA represents a reasonable, meaningful recovery for Class Members. (*Id.*, ¶ 23.)

5   Accordingly, the $1,500,000 TSA is well within the range of reasonableness.

### b.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.

8       When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot*

9   *v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court

10  approved a settlement agreement in which the defendant specifically denied liability, noting that such denial

11  of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, No.

12  1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement

13  agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013

14  WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-

15  consuming and expensive …").

16      Similarly here, Defendants continue to contest liability and the propriety of class certification.

17  Defendants' denial of liability, paired with their diligent opposition to class treatment, spotlight the risks of

18  continued litigation and favor granting final approval to the proposed Settlement.

19      Moreover, this class action involves intricate legal and factual questions. Litigating these complex

20  claims would require substantial additional discovery and pre-trial motions (including motions for certification

21  and decertification), as well as the consideration, preparation, and presentation of voluminous documentary

22  and testimonial evidence. (ECF 136-1, ¶ 33.) Trial itself would require the use of expert witnesses at the

23  damages phase, and would involve numerous complex legal and factual issues. (*Id.*, ¶ 35.) Once liability had

24  been established on a class-wide basis, Class Members might be required to testify at individual damages mini-

25  trials. As is typical with any case, but especially so with class actions, appeals would probably follow, with

26  the result that payments to Class Members, if any, would likely occur only after several years of delay. In

27  contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a

28  result benefits the Parties and the court system.

1    **V.      CONCLUSION**

2            For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the

3    Settlement.

4    DATED:  March 15, 2022              SETAREH LAW GROUP

5                                        /s/ Shaun Setareh
                                         _____
6                                        SHAUN SETAREH
                                         THOMAS SEGAL
7                                        Attorneys for Plaintiff
                                         CHRISTIANA BUSH

8    DATED:  March 15, 2022              FORD & HARRISON LLP

9
                                         /s/ Daniel B. Chammas
10                                       _____
                                         DANIEL B. CHAMMAS
                                         Attorneys for Defendant
11                                       VACO LLC

12   DATED:  March 15, 2022              PAUL HASTINGS LLP

13                                       /s/ Zachary P. Hutton
                                         _____
14                                       ZACHARY P. HUTTON
                                         Attorneys for Defendant

15                                       GOOGLE LLC

16

17

18

19

20

21

22

23

24

25

26

27

28